ROLAND A. CRANDALL *et al.*

*v.*

PAUL J. SORG.

*Opinion filed June 19, 1902—Rehearing denied October 10, 1902.*

1. CONTRACTS—*when a contract and lease must be construed together.* A contract and a lease executed as parts of the same transaction and relating to the same subject matter, although written at different times, are to be construed together as one instrument.

2. MECHANICS' LIENS—*when owner of fee subjects his title to liens for building constructed by tenant.* When the owner of vacant premises leases the same for ninety-nine years at an annual rental, and by contract the tenant is to construct upon the premises a building of a certain cost, by which contract it appears the improvement is the joint enterprise of the tenant and the owner, both are to be regarded as "owners" of the property within the mechanic's lien acts.

3. SAME—*law must prevail over contract.* A provision in a ninety-nine-year lease that lessor's interest in a building to be erected on the premises as the joint enterprise of the parties shall be exempt from mechanics' liens is void, as being an attempt to set aside the law of the land.

*Crandall* v. *Sorg*, 99 Ill. App. 22, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. W. BURKE, Judge, presiding.

ALBERT N. & EDWARD P. EASTMAN, and JOHN T. RICHARDS, for appellants.

H. H. C. MILLER, and W. S. OPPENHEIM, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Paul J. Sorg, appellee, filed a bill in the Cook circuit court for a decree declaring certain conveyances and claims for mechanics' liens to be clouds on his title to the south two acres of block 16, in canal trustees' subdivision of section 33, township 39, north, range 14, east, at the corner of Thirty-fourth and State streets, in Chicago, on which is situated a building known as the Mecca Hotel.

The bill asked the cancellation of the claims for mechanics' liens on the ground the complainant in the bill was the owner of the fee of the premises and had leased same for the term of ninety-nine years; that the claims for liens were for services rendered and materials furnished to the lessee, and were, if valid at all, only liens on the leasehold estate; that the lessee failed and made default in the payment of the rents reserved to be paid by the terms of the lease and failed to pay the taxes on the premises as required by the terms of the lease, and that after notice to each of said parties claiming liens, and default upon their part to pay such rents and taxes, the lease had been declared forfeited, in accordance with the terms and conditions of the instrument; that the leasehold estate had become forfeited, and that the petitions for liens and claims appearing of record for liens were clouds, and clouds only, on the title in fee in the complainant to the premises. The lease was attached to the bill as an exhibit. The appellants and other claimants for such liens, and other parties otherwise interested, were made parties defendant and filed answers to the bill. Cross-bills were also filed for affirmative relief in the way of decree establishing liens. The cause was referred to the master, the master's report filed and approved, and a decree entered in accordance with the prayer of the bill. The appellants in this court and other of the defendants to the bill in the circuit court perfected an appeal to the Appellate Court for the First District, where a judgment was entered reversing the decree of the circuit court and remanding the cause, with directions to dismiss the original bill and the cross-bills, and also to dismiss "all the petitions for mechanics' liens without prejudice to proceedings other than for mechanics' liens under the statute." This appeal is prosecuted to reverse the judgment of the Appellate Court.

The defendants to the bill pleaded, and on the hearing produced in evidence, a contract entered into by

198—4

the appellee and the lessee prior to the execution of the lease, which they insisted should be considered and taken as a part of the lease, and contended that the two instruments, considered together, showed the appellee was interested in the construction and ownership of the building on the premises, and that the liens ought legally to attach to both the leasehold and the fee title to the property.

The contract referred to was entered into on the 22d day of May, 1891. One Henry C. Hullinger then held the title to the premises in question. Hullinger was a clerk in the office of one George W. Henry. Henry and one James H. Campbell were the real owners of the property and Hullinger simply held title for them. It was an unimproved city lot or block. Hullinger, acting for said Henry and Campbell, and the appellee, on that day entered into the following contract:

"This agreement, made and entered into this 22d day of May, in the year eighteen hundred and ninety-one (1891), by and between Paul J. Sorg, of Middletown, Ohio, party of the first part, and Henry C. Hullinger, of Chicago, Illinois, party of the second part:

"*Witnesseth:* That for and in consideration of the sum of two hundred thousand dollars ($200,000) to be paid by the said party of the first part, in the manner hereinafter specified, to said party of the second part, the said party of the second part hereby agrees to sell to said party of the first part the following described property situated in the city of Chicago, in the county of Cook and State of Illinois, to-wit: The south two (2) acres of the northeast quarter of block sixteen (16), in the canal trustees' subdivision of section thirty-three (33), township thirty-nine (39), north, range fourteen (14), east of the third principal meridian, subject to all taxes and assessments levied after the year eighteen hundred and ninety (1890), and to any unpaid special taxes or assessments levied for improvements not yet made. Said party of the first part agrees to pay at the time of the execution of this

contract the sum of five thousand dollars ($5000) as earnest money, to be applied on said purchase when consummated, and agrees to pay within twenty days after the title has been examined and found good, the further sum of ninety-five thousand dollars ($95,000) at the office of Dennis, Netling & Co., Chicago, Illinois, provided a good and sufficient warranty deed conveying to said party of the first part a good title to said premises (subject only as aforesaid) shall then be ready for delivery. The said payment of five thousand dollars ($5000) is to be held in escrow with this contract by the Merchants' Loan and Trust Company of Chicago, Illinois, for the mutual benefit of the parties hereto; and in case the title, upon examination, is found materially defective within thirty days after said abstract is furnished, then, unless the material defects be cured within sixty days after written notice thereof, the said earnest money shall be refunded and this contract is to become inoperative. The said party of the second part agrees to furnish a complete abstract of title or merchantable copy within a reasonable time after the execution of this contract, showing the title down to the date hereof; and it is mutually agreed between the parties of the first and second parts, that should said purchaser fail to perform this contract on his part at the time and in the manner herein specified, the earnest money paid as above shall, at the option of the party of the second part, be forfeited as liquidated damages and this contract shall become null and void; and it is agreed by and between all of the parties to this contract that time is of the essence of such contract and of all the conditions and covenants thereof.

"It is also agreed by and between the said party of the first part and the said party of the second part, as follows: The said party of the first part will lease said premises to the said party of the second part for the term of ninety-nine (99) years, to commence at the date when said sum of ninety-five thousand dollars ($95,000)

shall be paid as hereinbefore provided, at an annual rental of twelve thousand dollars ($12,000) per annum, to be paid quarterly in advance, the first payment to be made on the day when the deed for said premises is delivered to said party of the first part and said sum of ninety-five thousand dollars ($95,000) is paid according to the terms of this contract, and the following payments to be made at intervals of three months thereafter during the entire term of said lease, said payments to be made quarterly in advance. Said lease is to contain all of the provisions and conditions in the form of a lease hereto attached, which is made, so far as said provisions and conditions are concerned, a part of this contract and binding upon said parties of the first and second parts.

"It is further agreed by and between said parties of the first and second parts, that said party of the second part will construct upon said premises a building which will cost not less than three hundred thousand dollars ($300,000), and that the construction of said building shall commence on or before September first, eighteen hundred and ninety-one (1891), and be ready for occupancy on or before February first, eighteen hundred and ninety-three (1893.) If said building is not ready for occupancy within the time named, allowance being made for labor strikes and the acts of God, the rights of said party of the second part hereunder and under said lease shall cease and determine, and so much of said building as shall then have been constructed shall be forfeited to said party of the first part by said party of the second part as agreed, assessed and liquidated damages, and all interests of said party of the second part therein shall cease.

"It is further agreed between said parties of the first and second parts, that said building shall be planned and supervised in the construction thereof by architects Treat & Foltz, or some other competent architect approved by said parties of the first and second parts, and that the construction thereof shall proceed uninterruptedly, al-

lowance being made only for labor strikes and the acts of God.

"It is further agreed by and between the parties of the first and second parts, that if, at any time after the commencement of the erection of said building, work therein shall cease for the space of sixty days, or valid liens thereon for an amount within twenty per cent of the amount then remaining unpaid to said party of the first part under the terms of this contract shall be filed or exist against or on account of said building, said party of the first part may declare said lease determined, and the rights of the said party of the second part under this contract and said lease, and in and to so much of said building as may then have been constructed, wholly forfeited to said party of the first part.

"It is further agreed by and between the parties hereto, that when said deed is delivered by said party of the second part to said party of the first part under the conditions hereinbefore provided, said party of the first part will deposit the sum of one hundred thousand dollars ($100,000), being the balance of the purchase money, in a national bank or trust company in the said city of Chicago, to be selected by said party of the second part: *Provided, however*, that said bank or trust company shall have a paid-up capital of at least one million dollars ($1,000,000.) In case of the failure of said bank or trust company, said party of the second part shall be liable for so much of said sum of one hundred thousand dollars ($100,000) as may be lost thereby, and said party of the first part will be considered to have paid to said party of the second part the full consideration for said premises. Such failure, however, shall not relieve said party of the second part from the performance of his covenants in the contract. Said sum of one hundred thousand dollars ($100,000) so deposited shall be paid out by said bank or trust company only as follows: The sum of twenty-five thousand dollars ($25,000) when said party of the

second part shall have expended in the construction of
said building the sum of fifty thousand dollars ($50,000),
and said supervising architect and an architect of the
city of Chicago to be selected by said party of the first
part join in a certificate, and present the same, together
with receipted bills showing that the sum of fifty thou-
sand dollars ($50,000) has been expended in the construc-
tion of said building, to said bank or trust company. If
said two architects cannot agree as to how much has
been expended in the construction of said building at the
time said twenty-five thousand dollars ($25,000) or any
of the other installments mentioned is requested of said
bank or trust company, said two architects last above
referred to shall select a third architect residing in Chi-
cago, and the decision of two of the three architects
so selected as to the amount of money that has been ex-
pended in the construction of the said building shall be
binding upon said party of the first part, and upon pre-
sentation of their report to him and a copy thereof to
said bank or trust company, showing that said sum of
fifty thousand dollars ($50,000) has been expended, as
aforesaid, in the construction of said building, (which
said report shall be countersigned by F. H. Ray, Esq., or
P. J. Sorg, and said Ray or Sorg hereby agrees to coun-
tersign the report of the architect so selected by them
within five days after presentation of said report to them
or either of them, provided that said architect's report
conforms to the terms of this contract,) then said bank or
trust company will pay to said party of the second part
the said sum of twenty-five thousand dollars ($25,000.)
Then when the fourth-floor joists are laid, an additional
sum of twenty-five thousand dollars ($25,000) shall be
paid upon the same conditions relating to the presenta-
tion of the architects' certificates and of receipted bills
as are provided for in the payment of the aforesaid sum
of twenty-five thousand dollars ($25,000), and when the
building is ready for occupancy and said bank or trust

company is presented with a certificate signed by said supervising architect and an architect of said city of Chicago to be selected by said party of the first part, showing that said building is ready for occupancy and that all sums due for or on account of the construction of said building, for labor, material or otherwise, have been paid and that no mechanics' liens exist against said building, (which said report shall be countersigned by F. H. Ray or P. J. Sorg, and said Ray or Sorg hereby agrees to countersign the report of the architect so selected by them within five days after presentation of said report to them or either of them, provided the said architects' report conforms to the terms of this contract,) the remaining installment of fifty thousand dollars ($50,000) shall be paid to the party of the second part.

"It is further agreed that said party of the second part shall be entitled to receive whatever interest, if any, said bank or trust company will pay on said deposit of one hundred thousand dollars ($100,000), and that he will commence to pay the rental hereinbefore provided for to said party of the first part from the date of the delivery of said deed and the deposit of said installment of one hundred thousand dollars ($100,000), as aforesaid.

"It is further agreed by and between said parties of the first and second parts, that said party of the second part will take out insurance on said building as it progresses, and will make the loss payable to said party of the first part as security for the rent due or to become due under said lease, said insurance to be for as large an amount as can be obtained from board companies to be approved by said party of the first part.

"It is further agreed that if said building shall not cost the sum of three hundred thousand dollars ($300,000), then said party of the second part shall pay to said party of the first part twenty per cent of the difference between three hundred thousand dollars ($300,000) and the actual cost thereof as agreed, assessed and liquidated damages.

The question as to whether said sum of three hundred thousand dollars ($300,000) has been expended upon said building is to be determined by said supervising architect and an architect to be selected by said party of the first part as aforesaid, and if the two architects so selected cannot agree, then they shall select a third, and the decision of any two of said architects shall be binding and obligatory upon the parties hereto.

"It is further agreed that if any disagreement arises at any time as to the rights or duties of said bank or trust company, or of the parties to this contract under this contract, the matter in dispute shall be submitted to three arbitrators, to be appointed in the usual manner and in accordance with the statutes of the State of Illinois in such case made and provided.

"It is further agreed that if any of the parties to this contract shall be compelled to resort to legal proceedings to enforce any of their rights under this contract, the offending party shall pay such attorneys' fees and other costs as the party bringing suit may be required to pay in such litigation.

"All of the covenants herein are binding and obligatory upon the parties hereto, their heirs, legal representatives and assigns.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

PAUL J. SORG,
HENRY C. HULLINGER.

"Signed, sealed and delivered in the presence of

H. H. C. MILLER,
GEO. W. HENRY."

The lease is exceedingly lengthy and many of its provisions are not here involved. So far as here involved it is, in substance and as abstracted, as follows:

Lease dated June 16, 1891, between Paul J. Sorg, party of the first part, and Henry C. Hullinger, party of the second part. First party, in consideration of "the rents

hereinafter reserved and of the covenants and agreements hereinafter contained, on the part of party of the second part * * * to be kept, performed and fulfilled, hath demised and leased" these premises, etc., for ninety-nine years. Lessor covenants that he is in full possession and will defend the title, "*Provided, however,* that no liabilities shall accrue against said payment of the first party under the above covenants, or any covenant, expressed or implied, herein contained, on the part of the party of the first part to be kept and performed in excess of $100,000, anything herein contained to the contrary notwithstanding;" $12,000 per year, payable in quarterly installments on the 16th day of June, September, December and March of each year. The party of the second part agrees to pay all taxes assessed against the property. In the event of his failure so to do, the party of the first part can pay them and collect the same as additional rent with the next quarterly installment. No assignment of this lease can be made when the party of the second part is in arrears, and the assignee to be bound by and subject to these terms and conditions. Any assignment made in compliance with the terms of this lease releases the assignor, but without consent or notice to the first party. The second party has the right, subject to all rights and privileges of the first party, to erect a building thereon, and to mortgage or lease the premises as security or assign the lease as collateral. "It is further agreed, and notice is hereby given, that no transfer, assignment, mortgage, judgment, mechanic's or other lien shall in any manner or degree affect the claim of the lessor in said building, and his rights in said premises under the various provisions of this lease." The premises shall not be let for unlawful purposes, and shall be kept in repair and in a wholesome condition, in accordance with the ordinances. The second party agrees to keep the premises insured in the sum of $100,000, loss payable to the party of the first part in case the same

are desired to be rebuilt, for which purpose the insurance money shall be used. Provided the building is not rebuilt, the insurance money is forfeited to the first party. Provided there is a termination of the lease before the expiration of the term, "all buildings, fixtures or improvements then situated on said premises shall be and become the property of the lessor, and that no compensation therefor shall be allowed or paid to the lessee." Lessor shall have and maintain a first lien upon all property for the rents, etc. Second party waives all demand or notice of forfeiture, provided the lease should run its entire term. The building shall be appraised, and that sum to be paid by the first party therefor.

The lease was, before work was begun on the building, assigned to an incorporated company called the "Mecca Company," which had been incorporated by Henry and Campbell, acting with others, for the purpose of receiving such assignment and of completing the building according to the contract and lease. The assignment of the lease to the Mecca Company was assented to by the appellee, Sorg, and the company entered upon the work of constructing the building in pursuance of the contract and lease. The title to the lot proved satisfactory. The appellee, Sorg, paid $100,000, as required by his contract to do, on receipt of the deed, and placed the $100,000 in the Columbia Bank, subject to the conditions of the contract. This sum was afterward paid to the Mecca Company in installments as the work proceeded on the building, each of the payments of installments being made, with the consent of the appellee, on certificates made by the architects, as provided by the contract.

The contract and lease were executed as part of the same transaction, related to the same subject matter, and, though written at different times, are to be construed together as though they constituted but one writing. This proposition is elementary, and has been too frequently declared by this court to make necessary the

citation of authorities. When these instruments are so read together, it is manifest the appellee, Sorg, is not to be regarded as but an ordinary lessor of the premises. Upon the contrary, the instruments disclose that the appellee and Henry and Campbell, the then owners of the title to the premises in question, jointly engaged in an enterprise which had for its purpose the construction of a building for rental purposes on the premises in question, and that they executed the contract and the lease for the purpose of setting forth the terms and conditions of the agreement between them, and of specifying the undertakings and obligations of each of the respective parties in the matter of procuring the premises whereon to erect the proposed building and in erecting the building, and for the further purpose of evidencing the respective rights and interests which each of the contracting parties was to have and enjoy in the premises when the building should be completed thereon. The substance of the agreement as to the right and interest of each of the respective parties in the premises (including the building) was, that the appellee was to have the fee and the other parties to the contract a leasehold of ninety-nine years' duration; that the appellee was to receive $12,000 per annum as rental on the lease and the other parties to enjoy the total rentals, less, of course, the sum of $12,000 per annum which appellee was to receive. The amount to be expended in the erection of the building, according to their understanding, was not less than $300,000. The amount of the payments to be made by appellee, Sorg, to the undertaking was $200,000. This sum is denominated in the instruments as the purchase price of the lot or block of ground, but the contract provided that he should receive a deed upon the payment of $100,000 of this sum, and should only be required to pay the other $100,000 in installments, at intervals, when the other parties to the enterprise should have expended twice the amount of such installments in the construction of the

building on the premises. The provisions of the contract with reference to the retention of that sum and its application to the construction of the building are inconsistent with the view that it, in fact, constituted a part of the purchase price of the vacant lot or block. It was clearly not within the contemplation and meaning of the parties that the appellee should pay $200,000 for the naked and unimproved lot. The contract secured to him, as grantor in the deed from Hullinger, the ownership (subject to the lease which he was required to execute) of the lot and the building thereon. It was for the lot as improved by the building he paid the $200,000, and the contract further expressly provided that if the building, when completed, had cost less than the sum of $300,000, twenty per cent of the deficiency should be re-paid to him. His interests and rights as to the character and quality of the building to be erected were preserved by the contract. The contract provided the structure should be planned and the construction thereof supervised only by such architects as should meet the approval of the appellee, and that no part of the $100,000 which the appellee was to deposit in the Columbia National Bank should be appropriated to the payment of the cost of the building except upon a certificate from such architects showing the progress that had been made in the work, and that the Mecca Company had paid toward the construction of the hotel the amount required by the contract first by it to be paid. These architects, in the supervision and construction of the building, were acting as the representatives of all the parties interested therein, including the appellee. The contract secured to the appellee the appropriation of the $100,000 deposited by him in the Columbia Bank to the cost and expense of erecting the building. In order to construct the building according to the terms of the contract an expenditure of $300,000 would be required. If completed according to the contract the building and the lot would represent a con-

tribution of $200,000 in cash by the appellee, and the contribution by said Henry and Campbell, or their representative, the Mecca Hotel Company, of the unimproved lot upon which the building was to be constructed and the sum of $100,000 in cash. The building was not only constructed with the consent of the appellee, but in pursuance of a contract entered into by him requiring it to be constructed. He was not disinterested in the construction thereof, but, on the contrary, was vitally interested therein. He furnished a sum of money with the distinct agreement it should be expended in the erection of the building, but not until others, who were his associates in the undertaking, or their assigns, should have contributed the amounts required of them to be paid for the same purpose. The legal title was in him. His associates held a lease for ninety-nine years. At the expiration of the lease, either by efflux of time or from any cause of forfeiture, the lot, including, of course, the building, would become the absolute property of the appellee. They were acting together in the construction of the building. Each was interested therein, and, within the meaning of the mechanic's lien statutes, they were, as to those who should furnish labor or material in the construction of the building, owners of the property.

Where a lease does not require or authorize the lessee to construct improvements on the demised premises the estate of the lessor is not liable to liens of laborers or material-men, unless the lessor has otherwise expressly consented and agreed that such improvements should be made upon his premises. In *Williams* v. *Vanderbilt*, 145 Ill. 238, we said (p. 248): "The estate of the lessor cannot be subjected to a lien for work done or materials furnished under a contract with the lessee unless the agreement or consent of the lessor is shown, or unless he has done some act to make his estate liable. (15 Am. & Eng. Ency. of Law, p. 19, and cases cited in notes; 2 Jones on Liens, sec. 1276.) Where a lessor agrees to pay to the lessee a

gross sum toward the erection of a house on the demised premises, the estate of the lessor is bound by the mechanic's lien.—*Leiby* v. *Wilson*, 40 Pa. St. 63; *Boteler* v. *Aspen*, 99 id. 313." In *Carey-Lombard Lumber Co.* v. *Jones*, 187 Ill. 203, we quoted the following extract from *Lumber Co.* v. *Nelson*, 71 Mo. App. 110: "One of the stipulations in the lease from Nelson was that the lessees should expend $20,000 in making improvements upon the leased premises, according to plans and specifications which had been agreed to. These improvements were to become the property of the lessor at the termination of the lease. In this state of the evidence it may be truthfully said the improvements on the Nelson lot, and the material necessary to make them, were made and furnished by his consent and for his benefit. He not only consented to them, but contracted with his lessees for them. The improvements were made and the material furnished under a contract authorized by him, and he must be held to have subjected his title in his lot to the plaintiff's lien, if the lien is otherwise valid." And we there said: "This we regard as a clear statement of the law, even under statutes without the provision in our act of 1895, 'or with one whom such owner has authorized or knowingly permitted to improve,' etc., and fully sustained by the authorities cited and numerous other decisions."

By the contract and lease here proven, construed together, as they must be, the appellee not only empowered, but required, his associates in the undertaking in which they were engaged to enter into contracts with material-men, workmen and laborers to construct a building on premises to which he held the legal title, and from which building he expected to obtain a direct personal benefit arising from the construction thereof. The appellee was not unmindful of the fact that under the laws of the State those who furnished material or performed labor in the construction of the building would be entitled to liens upon the property therefor. The contract

contained a provision that the final installment out of the said sum of $100,000 should be paid only on presentation of a certificate signed by the architect who, under the agreement of the parties, had supervision of the construction of the building, and also some other architect of the city of Chicago to be selected by the appellee, "showing said building is ready for occupancy, and that all sums due for or on account of the construction of said building, for labor, material or otherwise, have been paid, and that no mechanics' liens exist against said building," and further, that the certificate of such architect should be countersigned by the appellee or his agent, F. H. Ray. The contract further provided that if, at any time and during the construction of the building, "valid liens thereon for an amount within twenty per cent of the amount then remaining unpaid to said party of the first part under the terms of this contract shall be filed or exist against or on account of said building, said party of the first part may declare said lease determined, and the rights of said party of the second part under this contract and said lease, and in and to so much of said building as may then be constructed, wholly forfeited to said party of the first part."

It thus appears from the contract the appellee recognized the necessity of protecting his interest in the undertaking against indebtedness and liens for labor done upon the building or material furnished in constructing the same. The provisions of the contract were drawn with especial reference to that end and seemed to have been ample for the purpose. Whether he sought to avail himself of them does not appear. The lease contained the following provision: "It is further agreed, and notice is hereby given, that no transfer, assignment, mortgage, judgment, mechanic's or other lien shall in any manner or degree affect the claim of the lessor in said building and his rights in said premises under the various provisions of this lease." If we are right in the view heretofore

expressed, that the appellee is properly to be regarded as one of the persons engaged in the construction of the building on premises to which he held the title and. in the construction whereof he was personally interested and expected to be financially benefited, and that in the view of the enactments relating to mechanics' liens his position is that of owner, then this provision in the lease can only be regarded as a declaration on the part of persons engaged in the construction of a building, under circumstances which subject their property to the mechanic's lien laws of the State, that such laws shall not have operation against their property or the property of one of such persons. It must be remembered this lease was executed before any work was done upon the building, and it will be observed that in the provision under consideration the lessor asserts with distinctness that he understands he has a claim and interest in the building. If, upon all the facts and under the statute, a lien would attach, the declaration of the person against whose property the lien would operate, that it should not be effectual as against his property, would be entirely nugatory.

The report of the master, in substance, was, that the only relation which the appellee bore to the said Mecca Company was that of landlord, and that he was in no way interested, in the nature of ownership, in the building, and that the appellants, and other alleged lienholders, had constructive notice of the provision in the lease that no mechanic's lien should, in "any manner or degree, affect the claim of the lessor in said building or his rights in said premises." This finding of the master was approved by the chancellor and the decree appealed from was based thereon. In our view it was erroneous and must be reversed. We do not, however, decide that any valid mechanics' liens existed against the property. A great deal of testimony was submitted to the master upon the question of the validity of such liens, and many objections were preferred and exceptions preserved to such

evidence before the master and noted in his report. The master reported that in view of the fact this evidence had been taken he deemed it advisable to report his conclusions of fact and law as to each alleged lien, in order the court might be able to act upon such testimony and exceptions thereto in the event the finding and report of the master that the interest of the appellee could not, in any event, be held liable to such liens, was not approved. The chancellor, however, accepted the conclusion reached by the master that the alleged liens (other than that of Shields & Cook) did not attach to the fee title held by the appellee, and for that reason, as expressly stated in the decree, did not consider the testimony reported by the master bearing upon the validity of the liens or the propriety of the exceptions filed to such testimony.

Shields & Cook were principal contractors and claimed liens, but refused to pay the proportion of the master's costs ordered by the court to be paid by them, and the court dismissed them from the case. Afterward they were re-instated as parties, and in the decree the rights and cause of said Shields & Cook were expressly reserved for further determination by the court, and the alleged right of said Shields & Cook to a lien is still pending. We therefore refrain from considering whether the appellants have a valid lien under the statute, as all should be heard together. The parties are entitled to the action of the court on the objections and exceptions to the master's report, and to its judgment and decision as to the matters of fact disclosed by the testimony bearing upon the question of the existence and validity of the alleged liens.

The judgment of the Appellate Court and the decree of the circuit court are each reversed, and the cause will be remanded to the circuit court, with directions to overrule the recommendations of the master that a decree be entered in favor of the appellee on the ground that no

198—5

mechanics' liens could in any event attach to the title of said appellee, and to proceed to consider and dispose of the question of the validity of the alleged mechanics' liens of the appellants.

*Reversed and remanded, with directions.*