ARMSTRONG CORK CO. v. MERCHANTS' REFRIGERATING CO. et al.

(Circuit Court of Appeals, Eighth Circuit.    December 28, 1910.)

No. 3,385.

*(Syllabus by the Court.)*

1. MECHANICS' LIENS (§ 245*)—ENFORCEMENT—NATURE OF ACTION.
    A suit to enforce and foreclose a mechanic's lien is a suit in equity, and not an action at law in the national courts.
    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 428; Dec. Dig. § 245.*]

2. ACTIONS (§ 30*)—DISTINCTION BETWEEN ACTIONS AT LAW AND IN EQUITY—NATIONAL COURTS.
    The difference between causes of action at law and in equity inheres in the natures of the causes, is of substance, and not of form, cannot be eradicated by declarations or names, and is sedulously preserved in the national courts.
    [Ed. Note.—For other cases, see Action, Cent. Dig. § 216; Dec. Dig § 30.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. COURTS (§ 414\*)—ACTIONS (§ 30\*)—DUAL JURISDICTION OF CIRCUIT COURTS—SUIT AT LAW OR IN EQUITY.**

The Circuit Courts of the United States have a dual jurisdiction, a jurisdiction at law and a jurisdiction in equity, vested in the same judges and officers.

The facts stated, and the relief sought in a first pleading, and not its form or name, determine whether it invokes the jurisdiction and commences a suit at law or in equity.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 414;\* Actions, Dec. Dig. § 30.\*]

**4. EQUITY (§ 275\*)—PLEADINGS—AMENDMENT.**

An amendment to a pleading which sets forth no new cause of action relates back to the filing of the pleading amended, and the case stands as though the amendment had been then filed.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 567; Dec. Dig. § 275.\*]

**5. EQUITY (§ 330\*)—DEFECTS—WAIVER.**

Defendants whose names are stated in the caption or the body of the bill, who have been subpœnaed, have appeared generally, and have defended on other grounds, but have not demurred on the specific ground that the bill contains no prayer for process, are estopped from defeating the pleading or the suit on that ground, for such a defect is of form, and not of substance.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 661, 662; Dec. Dig. § 330.\*]

**6. LIMITATION OF ACTIONS (§ 118\*)—LIS PENDENS (§ 22\*)—SUIT COMMENCED BY FILING OF BILL.**

A suit in equity is commenced in a national court by the filing of the bill with the honest intention to prosecute the suit diligently, provided there is no detrimental or unreasonable delay in the subsequent issue or service of the subpœnas.

However, notice of lis pendens is not given by the filing to a bona fide purchaser until the subpœnas are served on the material defendants.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 528; Dec. Dig. § 118;\* Lis Pendens, Cent. Dig. § 35; Dec. Dig. § 22.\*]

**7. COURTS (§ 366\*)—FEDERAL COURTS—EFFECT OF DECISIONS OF STATE COURTS—LIMITATION.**

The courts of the state of Missouri hold that where a petition to enforce a mechanic's lien that was created and limited by a statute of that state is filed within the time limited, but the process is not issued until after the expiration of that time, the suit is not barred.

*Held:* Applying the doctrine of laches in analogy to this statute, as interpreted by the courts of the state, a complainant in a federal court who pursues a similar course is not guilty of fatal laches.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 366.\*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

LIMITATION OF ACTIONS (§ 127\*)—COMMENCEMENT OF SUIT—AMENDMENTS.

A complainant on the last day for commencing such a suit filed, in a Circuit Court of the United States in a state in which a suit to enforce a mechanic's lien may be tried and treated in the state courts as an action at law, a petition to enforce a mechanic's lien which was in the form used in such courts, and not in the form of a bill in equity in the federal courts, but which stated facts and prayed relief sufficient to constitute a good cause of action in equity. Three days later the complainant caused subpœnas to be issued and served. Six days after the filing of the bill, and before any copy had been taken out of the clerk's office, the com-

plaintant filed an amended bill in the form of a bill in equity which stated no new cause of action.

*Held:* The filing of the original pleading was the commencement of a suit in equity, the amended bill related back to that time, and the suit was not barred by laches, although the subpœnas were not issued until three days after the time to commence the suit prescribed by the statute had expired.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 456–468; Dec. Dig. § 260.*]

9. Mechanics' Liens (§ 23*)—Right to Lien—Improvement Remaining Property of Lessee.

A. made a lease to B. of a warehouse he was to rent, and therein gave B. permission to insulate it to enable him to use it as a cold storage warehouse, by placing within it material which could not be removed without destroying the value of the material and seriously injuring the building, but they stipulated in the lease that this material should not be a part of the realty, but should remain the property of the lessee, and the latter, by a provision of the lease, pledged this material to secure payment of the rent. The lease was recorded, A. constructed the building, thereafter the complainant made a contract with B. to insulate the building and performed the contract.

*Held:* The reversion of the lessor was not liable to a mechanic's lien for the value or the price of the insulation.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 24; Dec. Dig. § 23.*]

10. Mechanics' Liens (§ 10*)—Property Subject.

Personal property is not liable to a mechanic's lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 12; Dec. Dig. § 10.*]

11. Fixtures (§ 4*)—Intent of Owner.

The true test of the character of an improvement is the intent of the owner of the real estate to incorporate, or not to incorporate, it permanently in his realty as a part thereof.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 3; Dec. Dig. § 4.*]

12. Fixtures (§ 14*)—Personalty and Realty Between Lessor and Lessee, Vendor and Vendee and Mortgagor and Mortgagee.

The line of demarcation between realty and personalty in cases of landlord and tenant differs from that in cases of vendor and vendee, or mortgagor and mortgagee, because the occupancy of the premises is more transitory in cases of landlord and tenant.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 22; Dec. Dig. § 14.*]

13. Mechanics' Liens (§ 78*)—Improvement by Lessee—Record of Lease—Notice to Contractor.

The record of a lease is notice to a subsequent contractor with the lessee of the terms of the lease pertinent to the questions of a mechanic's lien upon the reversion of the lessor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 111; Dec. Dig. § 78.*]

Appeal from the Circuit Court of the United States for the Western District of Missouri.

Bill by the Armstrong Cork Company against the Merchants' Refrigerating Company and others. Decree (171 Fed. 778) for defendants, and complainant appeals. Order sustaining demurrer of certain defendants and dismissing the bill as to them sustained, and order sus-

taining demurrers and dismissing the bill against the other defendants reversed, and cause remanded.

Denton Dunn (William S. Gilbert and Henry D. Ashley, on the brief), for appellant.

James S. Botsford (Buckner F. Deatherage, Goodwin Creason, and F. V. Kander, on the brief), for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. This is a suit to foreclose a mechanic's lien. The materials and labor were furnished to a lessee, the defendant, the Merchants' Refrigerating Company, a corporation, to enable it to insulate a building which had been erected by the lessor, the defendant, Morris Lyon, as trustee, on land owned by him. The bill of the complainant was repeatedly amended, and the suit was finally submitted to the court below on the last amended bill and numerous demurrers and pleas, which presented two questions: Was the suit of the complainant barred by its laches? and, if not, did the amended bill state facts sufficient to show that the complainant was entitled to a lien upon the interest of the lessor in the land and building? The court below answered the first question in the affirmative, dismissed the bill in pursuance to that answer, and did not consider or decide the second question. The facts which conditioned the determination of the first question were these:

The statute of Missouri, which creates the mechanic's lien, limits the time within which a suit may be brought to enforce it to 90 days after the date of the filing of the statement of the lien with the clerk of the court. Rev. St. Mo. 1899, § 4218 (Ann. St. 1906, p. 2310). Under the established practice in the courts of the state of Missouri such suits may be treated and tried as actions at law, but in the courts of the United States they are suits in equity. Scheffield Furnace Co. v. Witherow, 149 U. S. 574, 579, 13 Sup. Ct. 936, 37 L. Ed. 853; Hatcher v. Hendrie & Bolthoff Mfg. & Supply Co., 133 Fed. 267, 271, 68 C. C. A. 19, 23. One of the defendants in the suit in hand was Willard P. Hall, who, as receiver and trustee in bankruptcy of the Refrigerating Company, had succeeded to the interest of that lessee in the land and building. Complainant's counsel had prepared their petition to foreclose the lien for filing in the state court on the assurance of Mr. Hall that he would be officially discharged before the ninetieth day after the filing of the statement of lien. The ninetieth day was February 7, 1908, and on February 6, 1908, Hall told the counsel for the complainant that an obstacle had appeared which would prevent his discharge until after the ninetieth day. Then it became necessary to make Mr. Hall a defendant in the suit, and counsel found that there was no federal district judge in the Western district of Missouri from whom they could obtain leave to sue the receiver and trustee, and they went to Red Oak, Iowa, and obtained from Judge McPherson, who had been assigned to the Missouri district, an order permitting them to sue the officer of the federal court, but the judge requested that the suit be brought in the federal court if counsel found

that that court had jurisdiction of the controversies. Thereupon the counsel for the complainant inserted the jurisdictional averments in the petition which they had drawn and filed it on the ninetieth day, but did not have time to redraft it in the usual form of a bill in equity. On the same day a summons at law was issued upon the petition and delivered to the marshal who subsequently returned it without service on April 27, 1908, by direction of complainant's counsel who learned on Saturday, February 8, 1908, that subpœnas in chancery instead of a summons at law should have been issued, and on Monday, February 10, 1908, they caused such subpœnas to be issued and to be served upon the defendants on that day and the succeeding one. On February 13, 1908, and before any copy of their petition had been taken out of the clerk's office they filed an amended petition in the customary form of a bill in equity, except that it contained no prayer for process, nor did the original petition.

Counsel for the defendants argue (1) that the original petition was filed in an action at law on the ninetieth day, and while a summons was issued none was served so that the action at law was never commenced; (2) that neither the original petition, nor the amended petition which was filed on February 13, 1908, were effective as bills in equity because neither contained any prayer for process; and (3) that the amended petition could not constitute an amendment of the original petition because it was a bill in a suit in equity, while the original petition was a complaint in an action at law; and (4) that the amended petition and the subpœnas were too late to commence a suit in equity to foreclose the mechanic's lien, because the former was not filed and the latter were not issued until several days after the expiration of the ninety days from the date of the filing of the statement of the lien, and it was indispensable to the maintenance of the suit that the former should have been filed and the latter should have been issued within the ninety days.

For the purpose of the consideration and decision of this case it is conceded that no action at law was commenced by the filing of the original petition and the issue of the summons which was returned without service by order of complainant's counsel. But that petition stated facts which constituted a good cause of action in equity, a cause of action which entitled the complainant to a decree for the foreclosure of its mechanic's lien. That petition set forth the interests of the defendants in the property in controversy, a contract between the Refrigerating Company and the complainant for the materials and labor requisite to insulate the building in order to make it a cold storage warehouse, the furnishing of the materials and the performance of the labor by the complainant pursuant to the contract, the Refrigerating Company's indebtedness to the complainant for these materials and this labor in the sum of $12,761.16, and the filing of the statement and claim of lien as prescribed by the statute, and it also contained a prayer that the complainant have judgment against the Refrigerating Company for the amount of the latter's indebtedness, and that "the same may be declared a lien against the property above described prior and superior to the lien or claim of each and

all the defendants." The United States Circuit Court for the Western district of Missouri was one court with a dual jurisdiction—a jurisdiction of actions at law and a jurisdiction of suits in equity—vested in and exercised by the same judges and the same clerk and marshal. The difference, however, between causes of action at law and causes of action in equity is in matter of substance, and not of form. It inheres in the natures of the causes themselves, and it cannot be extracted by legislation or declaration. This ineradicable difference is sedulously preserved in the forms of the suits which enforce these causes in the national courts. In those courts a legal cause of action may not be sustained in equity because the parties are entitled to a trial of the issues in such a cause by a jury under article 7 of the amendments to the Constitution of the United States, and it is only when there is no adequate remedy at law that a suit in equity can be maintained. On the other hand, equitable causes and defenses are not available in actions at law because such causes invoke the judgment and appeal to the conscience of the chancellor, and the free exercise of that judgment and conscience is forbidden in actions at law by the rule which entitles either party to a trial of all the issues of fact by a jury. Bagnell v. Broderick, 13 Pet. 436, 10 L. Ed. 235; Foster v. Mora, 98 U. S. 425, 428, 25 L. Ed. 191; Scott v. Armstrong, 146 U. S. 499, 512, 13 Sup. Ct. 148, 36 L. Ed. 1059; Lindsay v. Bank, 156 U. S. 485, 493, 15 Sup. Ct. 472, 39 L. Ed. 505; Schoolfield v. Rhodes, 82 Fed. 153, 155, 27 C. C. A. 95, 97; Davis v. Davis, 72 Fed. 81, 83, 18 C. C. A. 438, 440; Highland Boy Gold Min. Co. v. Strickley, 116 Fed. 852, 854, 54 C. C. A. 186, 188; Schurmeier v. Connecticut Mutual Life Ins. Co., 137 Fed. 42, 46, 69 C. C. A. 22, 26. As the essential character of a cause of action and of the remedy it seeks determines whether it is a cause at law or in equity, neither the parties to it nor the court can by declaration or procedure make a cause of action at law a cause in equity, or vice versa, and when a pleading by the complainant, whether styled a petition, a declaration, or a bill, is filed with the clerk of a federal court which states any cause of action, it necessarily states one at law or one in equity, and the facts set forth in the pleading and the remedy sought thereby determine whether the cause of action pleaded is at law or in equity, and whether the pleading filed invokes the jurisdiction of the court at law or in equity. Van Norden v. Morton, 99 U. S. 378, 380, 25 L. Ed. 453; New Orleans v. Construction Co., 129 U. S. 45, 9 Sup. Ct. 223, 32 L. Ed. 607.

The facts stated and the remedy sought in the original pleading in the case at bar constituted a cause of action in equity because the issues tendered thereby were not triable by a jury, and the relief sought, the adjudication and foreclosure of the mechanic's lien, was grantable by a court of equity and not by a court of law. In other words, the pleading disclosed the fact that the complainant had no adequate remedy at law in the federal courts, and hence that that court in equity had jurisdiction. The petition was in fact a bill in equity, although in the form of such a petition as was customarily filed in the state courts in cases of this character. It was filed on the ninetieth day

after the filing of the statement, and therefore within the time limited for the prosecution of such a suit by the statute of Missouri, and under the twenty-eighth rule in equity the complainant had the right "to amend his bill as of course in any matters whatsoever before any copy had been·taken out of the clerk's office." In compliance with that rule the complainant filed its amended bill on February 13, 1908, before any copy of the original had been taken out of the clerk's office. The amended bill presented no new or different cause of action. It simply stated the facts set forth in full in the original bill in the form of a bill in equity in the federal courts, save that it contained no prayer for process. Hence it related back to the filing of the original bill, and the case thenceforth stood as though the amended bill had been filed on February 7, 1908, and within the 90 days limited for the commencement of the suit. Bowden v. Burnham, 59 Fed. 752, 8 C. C. A. 248; Goodman v. City of Fort Collins, 164 Fed. 970, 973, 91 C. C. A. 98, 101.

Rules 11, 12, and 23 in equity provide that no process of subpœna shall issue until the bill is filed, that when the bill is filed the clerk shall issue the process of subpœna of course upon application of the plaintiff, and that the prayer for process in the bill shall contain the names of all the defendants named in the introductory part of the bill, but in this case neither the original nor the amended bill contained any prayer for process. No objection, however, to the subpœnas issued on February 10, 1908, on the application of the complainant, or to the original or amended bill was made upon this ground by any of the defendants, either by motion or by demurrer, but they entered their appearances and claimed on other grounds that the suit could not be maintained. Was the absence of the prayer for process fatal to the bills? Section 954, of the Revised Statutes (U. S. Comp. St. 1901, p. 696) provides that no declaration, process or proceedings in civil causes in any court of the United States shall be abated, arrested, quashed or reversed, for any defect or want of form, but that such court shall proceed to give judgment according to the right of the matter without regarding any such defect or want of form except those which, in cases of demurrer the party demurring specially sets down together with his demurrer as the cause thereof, and that the court may at any time permit either party to amend any defect in the process or pleadings. ·The only reason for a prayer for process is that the names of the defendants to be subpœnaed may be clearly set forth in the pleading so that the clerk may issue the process to the right parties. The names of the defendants in this case were stated in the caption and in the introductory part of the bill. The absence of a prayer for the process of subpœna, and the failure of the complainant to state the names of the defendants a third time in the prayer, was not set down for hearing by any of the defendants as the cause of his or its demurrer. The absence of this prayer for process was a mere defect of form, and defendants who are named in the body of the bill, who have been subpœnaed, who have entered their general appearance, and have not demurred on the specific ground that there was no prayer for process against them are estopped from defeating

the bill upon that ground. Jennes v. Landes (C. C.) 84 Fed. 73; Segee v. Thomas, 21 Fed. Cas. No. 12,633, pages 1018, 1020; Buerk v. Imhaeuser (C. C.) 8 Fed. 457; Wilson v. Plutus Mining Co., 174 Fed. 317, 320, 98 C. C. A. 189; and cases there cited. There was, therefore, a sufficient bill in equity filed in this case within the time fixed by the statute, but the subpoenas were not issued until the ninety-third day after the filing of the statement of lien and they were not served until that day and the next succeeding day. The remaining question is, was the delay in issuing the subpoenas fatal to the suit?

The rule upon this subject under the ancient English chancery practice and in the early practice in the chancery courts of the states, seems to have been that a suit in equity was commenced when the subpoena was issued with the honest intent, followed by a diligent attempt, to serve it speedily. United States v. American Lumber Co., 85 Fed. 827, 829, 830, 29 C. C. A. 431; Harg. Law Tracts, 321, 425; Pigott v. Nower, 3 Swanst. 534; Hayden v. Bucklin, 9 Paige (N. Y.) 512; Fitch v. Smith, 10 Paige (N. Y.) 9; Pindell v. Maydwell, 7 B. Mon. (Ky.) 314. This rule was perhaps a natural result from the fact that in the ancient English chancery practice subpoenas were issued before the bills were filed. The multiplication of courts of concurrent jurisdiction in this country, and the necessity for the frequent application of the rule that the court which first acquires jurisdiction of a subject-matter retains it against all others until the purpose of the invocation of its jurisdiction has been served have led to a wise modification of this rule in the federal courts where the modern and the wiser rule now prevails that a suit in equity is commenced by the filing of the bill with the bona fide intention to prosecute the suit diligently, provided there is no detrimental or unreasonable delay in the issue or the service of the subpoena. Farmers' Loan & Trust Co. v. Lake Street R. R. Co., 177 U. S. 51, 60, 20 Sup. Ct. 564, 44 L. Ed. 667; Humane Bit Co. v. Barnet (C. C.) 117 Fed. 316. There is an exception to this rule that notice of the pendency of the action to third persons who are bona fide purchasers is not given by the mere filing of the bill until the subpoena is served upon the defendant. Miller v. Sherry, 2 Wall. 237, 250, 17 L. Ed. 827. Under this rule a suit was commenced within the 90 days and it may be maintained.

Moreover in the courts of the state of Missouri the filing of a petition is the commencement of the suit, although no process issues until after the time limited by the statute has expired, and if this suit had been brought in the state court, and the summons had not been issued until the ninety-third day it would undoubtedly have been sustained. Rev. St. Mo. 1899, § 566 (Ann. St. 1906, p. 595); Gosline v. Thompson, 61 Mo. 471; South Missouri Lumber Co. v. Wright, 114 Mo. 326, 332–334, 21 S. W. 811; McGrath v. St. Louis, K. C. &. C. R. Co., 128 Mo. 1, 30 S. W. 329; State v. Wilson, 216 Mo. 215, 115 S. W. 549. This is a suit in equity in a federal court. The defense under consideration is not the statute of limitations, but the laches of the complainant, for courts of equity are not bound by the statute of limitations, but are governed by their analogous doctrine of laches. This doctrine is applied in analogy to the statute of limita-

tions relating to actions at law of like character. Under ordinary circumstances courts of equity will not stay a suit before, nor maintain it after, the time fixed by the corresponding statute of limitations at law; but if extraordinary circumstances make it equitable to allow its prosecution after a shorter, or to forbid its maintenance after a longer, period than that fixed by the statute they will determine the extraordinary case in accordance with the equities which condition it. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21; Ide v. Trorlicht, etc., Carpet Co., 115 Fed. 137, 148, 53 C. C. A. 341, 352; Brun v. Mann, 151 Fed. 145, 154, 80 C. C. A. 513, 522, 12 L. R. A. (N. S.) 154. Now, even if the rule of the federal courts were that a suit in equity was not commenced until the subpœna was issued, or until it was served, yet since the analogous statute of limitations at law, as interpreted by the courts in the state of Missouri which enacted it, would not bar an action like this in hand in which the petition was filed within, and the summons was issued and served without, the 90 days, a national court in equity ought not to bar such a suit under the circumstances of this case. No facts have been pleaded or proved, no detriment to the defendants by the three days' delay in the issue and service of the subpœnas, no bona fide purchasers in the meantime have been suggested which require a more rigorous application of the doctrine of laches than the established interpretation of the statute of limitations in Missouri requires. And the conclusion is that the delay in issuing the subpœnas was not fatal to this suit and it may be lawfully maintained.

The second question in this case is, Did the amended bill state facts sufficient to show that the complainant was entitled to a lien upon the interest of the lessor, Morris Lyon, as trustee, in the land and building owned by him? By stipulation of the parties it is agreed that the lease which conditions the true answer to this question shall be deemed an exhibit to the bill. That lease was made on May 10, 1906, between Morris Lyon, trustee for Morris Lyon and Theodore Lyon and M. Lyon & Co., called lessors, and one Brady, and the Merchants' Refrigerating Company, a corporation, called the lessees, but for the purposes of this decision Morris Lyon, the trustee, will be termed the lessor and the Refrigerating Company the lessee. The premises leased consisted of a part of a building to be erected and constructed on certain lots in Kansas City, Mo., the term was 10 years, with the privilege of a further term of 15 years, the rental was $1,060 per year, the building was to be erected, and it was subsequently erected, by the lessor, and the lease contained provisions that "the lessees shall have the right to install in said building, and in and upon said premises, its pipes and insulation for refrigerating purposes throughout said building, and said pipes, insulation and necessary attachments thereof shall be and remain the property of the lessees, and shall never be considered as having become a part of the realty and belonging to the lessors, provided, however, that if the lessee shall fail to pay any monthly installment of rent due the lessors on the tenth of the month after the same shall have become due on the first day of the month," then the lessors may give written notices, and if the rent

is not paid, all the insulation, appurtenances, and machinery thereto belonging in said building, or on said premises, may be sold by the lessors, and after deducting the costs and expenses of such sale the proceeds shall be applied to the payment of the rent and the lessee shall still be liable for the portion unpaid. This lease was recorded in the office of the recorder of deeds for Jackson county, Mo., before the complainant made its contract with the Refrigerating Company to furnish the material and perform the work for which it claims a mechanic's lien. At the time the lease was made Lyon and the Refrigerating Company were aware of the facts that the sole business of the latter company was acquiring and operating cold storage plants and pipe lines for supplying refrigeration, that the insulating material was necessary for the use of the warehouse as a cold storage warehouse, and that it must be so attached to and built into the building as to become a part thereof and to constitute a permanent improvement thereof, irremovable therefrom without partially destroying and damaging the building. The complainant made a contract with the Refrigerating Company to furnish the requisite labor and materials to insulate this building after it had been erected, and this suit is brought to maintain a mechanic's lien for a portion of the value thereof which has never been paid, under sections 4203 and 4206 of the Statutes of Missouri of 1899 (Ann. St. 1906, pp. 2277, 2289). As the right to this lien arises from these statutes their construction by the courts of Missouri is controlling in this court, and the question whether or not the reversion of Lyon as trustee is subject to this lien must be determined by the decisions of the courts of that state.

It is settled in that state by repeated decisions that no mechanic's lien can exist upon personal property. The line of demarcation between realty and personalty in cases between landlord and tenant is by no means the same as in cases between vendor and vendee and mortgagor and mortgagee, and this for the reason that the relation of landlord and tenant is transitory—the use of the property is by one who is to stay for a limited time, and many articles are placed upon the realty by the tenant which both parties intend shall be removed at the end of the term; while the things placed upon the realty by the vendor or the mortgagor are put there by one whose term of occupancy is ordinarily unlimited and generally with the intention that they shall become a part of the real estate, and that they shall be perpetually and habitually used with it. Thus in Press Brick & Machine Co. v. Brick & Quarry Co., 151 Mo. 501, 513, 514, 52 S. W. 401, 404 (74 Am. St. Rep. 557) the Supreme Court of Missouri says:

"Of course there is no lien on the house or land given by the statute for any kind of machinery that is simply stored in the house awaiting sale, or for any temporary purpose, nor can there be a lien where a tenant puts in machinery under a lease which reserves to him a right of removal, for in such cases the chattel never becomes part of the realty; but if the machinery is put into a building by the owner with the intention of making it a permanent part, then the person furnishing the material is entitled to a lien on the building, and it is then wholly immaterial when the machinery is so put in the building, whether at the time it was originally constructed or at any time afterwards."

And so is Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 111 Fed. 81, 94, 49 C. C. A. 229, 242. Counsel for the complainant argue that it is entitled to a lien upon the reversion because the insulating material was secured to the walls of the building by cement and by nails so that it could not be removed without injury to the insulation, and also to the building, and they rely upon this fact and upon the claim that the lessee, the Refrigerating Company, was the agent of the lessor, Lyons, to make the contract with the complainant for this material and the connecting pipes. In support of their contention they cite Press Brick & Machine Co. v. Brick & Quarry Co., 151 Mo. 501, 513, 514, 517, 52 S. W. 401, 74 Am. St. Rep. 557; Crane Company v. Construction & Real Estate Co., 121 Mo. App. 209, 218, 222, 98 S. W. 795; Dougherty-Moss Lumber Co. v. Churchill, 114 Mo. App. 578, 582, 583, 584, 586, 90 S. W. 405; Hardware Co. v. Churchill, 126 Mo. App. 462, 465, 104 S. W. 476; Crandall v. Sorg, 198 Ill. 48, 58, 60, 61, 62, 63, 64, 64 N. E. 769; Carey-Lombard Lumber Co. v. Jones, 187 Ill. 203, 205, 211, 58 N. E. 347; and Winslow Bros. Co. v. McCulley Stone Mason Co., 169 Mo. 236, 243, 244, 245, 247, 248, 69 S. W. 304. In the last case the owners of real estate organized a new corporation, and caused a partially erected building to be leased to it with the intention that this new corporation should complete the building for the benefit of the owners, and the court held that the lessee was in reality the agent of the owners, and that their interest was lienable. The lease in this case negatives any such agency as well as the fact that the lessor kept his interest in the property separate from that of the lessee, constructed the warehouse himself, and expressly stipulated that the insulating material and the pipes might be placed therein by the lessee and should remain its property and not that of the lessor. The other cases which have been cited rest largely upon the facts peculiar to those cases which were deemed by the courts to show a clear intention on the part of the parties that the material and labor furnished should work a permanent improvement to the building for the benefit of the owner. The true test of the liability of the property of an owner to a lien for materials furnished and labor performed under a contract with a lessee is the intention of the parties to work a permanent improvement to the reversion for the benefit of the lessor. If they had no such intention when the lease and the contract were made and performed then there can be no mechanic's lien, because the improvement made never becomes a part of the realty; if they had such intention the lien upon the reversion may be sustained. Press Brick & Machine Co. v. Brick & Quarry Co., 151 Mo. 501, 513, 52 S. W. 401, 74 Am. St. Rep. 557; Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 111 Fed. 81, 94, 49 C. C. A. 229, 242. The character of the improvement, the method of its attachment and its other incidents are but evidences of the intent or the lack of intent to incorporate permanently the improvement in the plant or property, and they are material in the determination of the real question only as they indicate such an intent. Where, at the end of the lease, the improvements are to become a part of the property of the lessor, this fact, the character of the improve-

ment, and the method of its attachment sometimes furnish evidence so conclusive that it was the intent of the lessor that the improvements should be permanent and should be made for his benefit that a stipulation to the contrary in a lease is ineffective to bar a materialman from his lien. Dougherty-Moss Lumber Co. v. Churchill, 114 Mo. App. 578, 582, 583, 584, 90 S. W. 405. But the legal presumption and the general rule is that parties intend what their contracts evidence, and that an agreement between the landlord and tenant which leaves to the latter the right to remove his improvements at the end of his term renders them personal property, and deprives parties who have notice of their contract of the right to a lien upon the reversion for improvements made under a contract with the lessee. McLain Investment Co. v. Cunningham, 113 Mo. App. 519, 523, 87 S. W. 605; White's Appeal, 10 Pa. 252; Springfield Foundry & Machine Co. v. Cole, 130 Mo. 1, 8, 9, 31 S. W. 922. The facts that the improvements of the lessor and the lessee were by the terms of the lease and by the acts of the parties in this case clearly segregated each from the other, that the lessor was to construct and did build the warehouse, that the lessee was permitted by the terms of the lease, and not required to place within it for its own purpose of using it as a cold storage warehouse, the insulating material and pipes, that this material and these pipes were not to become the property of the lessor at the end of the lease but were to remain the property of the lessee, and that the latter pledged them to the lessor as security for the rent, overcome all other indications in this case and clearly show that it was the intent of the lessor and of the lessee when this lease was made and when these improvements were placed within the warehouse that they should remain personal property and should never become a permanent part of the real estate of the lessor. The fact that the contract under which the complainant furnished the material and performed the labor was not with the lessor, but was with the lessee alone, confirms this conclusion. Boiler Works Company v. Haydock, 59 Mo. App. 653, 656, 658, 659; Koenig v. Mueller, 39 Mo. 165, 168. The record of the lease was notice to the complainant that the improvements he was placing in this warehouse remained the personal property of the lessee, that they did not become a part of the realty and that Lyon's reversion in the warehouse and the land upon which it stood were not chargeable with a mechanic's lien for the purchase price of the work and the material it was furnishing, Faxon v. Ridge, 87 Mo. App. 299, 307, and the conclusion is that the amended bill did not state facts sufficient to show that the complainant was entitled to a lien upon the interest of the lessor in the land and warehouse. The result is that the order and judgment sustaining the demurrer of the defendants, Morris Lyon, trustee of M. Lyon & Co., Morris Lyon, Theodore Lyon, and Lee Lyon, partners under the firm name of M. Lyon & Co. and dismissing the bills as against them, must be sustained, and the order of the court below sustaining the demurrers and pleas, and dismissing the original and amended bills in this suit against the other defendants, must be reversed, and the case must be remanded to the court below, with directions to overrule all the demurrers

and pleas, except the demurrer of the defendants, Lyon, as trustee, and Morris Lyon, Theodore Lyon, and Lee Lyon, and to permit the other defendants to answer, and it is so ordered.