[No. 7761]

## STEWART ET AL. V. TALBOTT ET AL.

1. MECHANICS LIEN—*To What the Lien Extends—Improvements by Tenant—Statute Construed.* The lien given by § 4025 R. S. 1908, to mechanics, material men, etc., and persons performing labor or furnishing materials for the construction of any building, etc., upon the property upon which they have rendered service or bestowed labor, or for which they have furnished materials, etc., at the instance of the owner or any person acting by his authority or under him as agent, contractor or otherwise, for the value of such work, labor, services or materials, primarily extends only to the structure or improvement placed upon the land. (570, 571)

2. ——*Statutory Agent—Improvement—Land.* The provision of § 4025 R. S. 1908, that "every person having charge of the construction * * * of any building * * * shall be held to be the agent of the owner," confers upon the person so in charge the character of statutory agent of the one erecting the structure or improvement, but does not constitute him the agent of the owner of the land upon which the improvement is placed. (570)

3. ——*When Lien Extends to Land.* By virtue of R. S. 1908, § 4027, the lien provided for by R. S. 1908, § 4025, may extend to the land upon which the structure or improvement is placed, but can attach only when the owner of such land has some ownership in the building or improvement, and acts affirmatively relative to its construction or repair. (571)

4. ——*Where Notice of Non-liability from the Landlord is Required.* § 4029 R. S. 1908 applies only to the case of an improvement made without authority of the land owner, and where, after its progress comes to his knowledge, he fails to give notice to those engaged in the work, disclaiming liability. *Grimm v. Yates, ante* followed. *Shapleigh v. Hull,* 21 Colo. 419, distinguished. (574, 576)

5. ——*Inception of Right to Lien—By Contract, or Estoppel.* The inception of, or right to a lien under R. S. 1908, § § 4025, 4027, grows out of contract; under R. S. 1908 § 4029, it arises from estoppel. (574)

6. LANDLORD AND TENANT—*Improvements--Leasehold and Fee.* The mere inclusion in a lease of a covenant to build does not of itself render the lessee either the agent or contractor of the lessor so as to bind the latter's interest with a lien. The improvement must be of such a character and extent, or made under such circumstances, as to show that it was made either by the lessor acting through the

lessee as his agent, or as the joint undertaking of both, before the lessor's interest in the land can be bound. (584, 587)

7. ——*Rule Applied.* A lease was granted for the term of 99 years, and provided that the tenant should, at his own expense, erect and complete a building to cost not less than $150,000, and thereupon the building and improvements should at once become a part of the realty. The landlord took no part in the erection of the building, having nothing to say as to the architecture, plans, or material, and there was no allegation or proof that the rents reserved were greater than the reasonable value of the premises. The lease was recorded on the day succeeding its execution, and was brought to the attention of the party contracting with the tenant. *Held* that the estate of the landlord was not chargeable with the lien. (587)

8. ——*Lease—Construed—Presumption.* The provisions in the lease, which was duly recorded, that nothing therein should authorize or empower the lessee or any person dealing with him to charge the fee, or any interest of the lessor therein, with any mechanic's lien or encumbrance of any kind, nullified and destroyed any presumption that the lessee was the agent of the lessor within the mechanic's lien laws, and constituted constructive notice to those subsequently acquiring an interest in the premises as to the power and authority of the lessee therein, and no lien could attach to the lessor's interest, not solely because of the stipulation in the lease forbidding it, but because the facts show that the lessee in making the improvements did not act as the agent of lessor, and the improvements were not made at the latter's instance. (588, 589)*

MUSSER, C. J. concurred, but resting his conclusion solely upon the clause of the lease that nothing should authorize the lessee to charge any interest of the lessor in the demised premises with any lien or encumbrance. The lessee, his honor said, was not of the class mentioned in Rev. Stat. Sec. 4025; the agency of the lessee, if any existed, was created by the lease, and was, of course, subject to the limitations there set down; that those dealing with him, having notice of those limitations, must at their peril observe and keep within the limits of his authority; that the lien laws of this state do not render such a stipulation between lessor and lessee void or ineffective; any such legislation, if constitutional, which his honor seems to doubt, must declare the prohibition by express words, or necessary implication.

As to the notice required by Rev. Stat. Sec. 4029, his honor said it could not be required as to anyone having already notice that the lessor's interest was not chargeable, and the record of the lease, authorized by Rev. Stat. Secs. 694, 707, was notice to all the world that the lessor's interest was not to be subjected to a lien, for any improvements made by the lessee.

*Syllabus by WHITE, J.

*Error to Denver District Court.*—Hon. GEORGE W. ALLEN, Judge.

## On Rehearing.

Messrs. ROBINSON & ROBINSON, Messrs. DINES, DINES & HOLME, Messrs. BENEDICT & PHELPS, Messrs. BARTELS, BLOOD & BANCROFT, Mr. RAYMOND J. McPHEE, Mr. L. WARD BANNISTER, Mr. L. McWHINNEY, for plaintiffs in error.

Mr. C. H. REDMOND, Messrs. GOUDY & TWITCHELL and Mr. J. H. BURKHARDT, for defendants in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

Talbott and Mugivan, defendants in error, owners of four lots on Champa street between Fourteenth and Fifteenth streets in the City of Denver, entered into a written contract by which they leased them to The American Music Hall Company, a corporation, for the term of ninety-nine years. The lease contract provided, *inter alia*. ''That on or before the first day of July, A. D. 1910, the lessee will proceed to improve said premises by the erection, construction and maintenance of a building covering said premises, said building to cost, when completed, not less than one hundred fifty thousand dollars ($150,000.00); * * * and to be fully completed on or before the first day of January, A. D. 1911; * * *. All buildings and improvements of every nature soever erected or placed upon said premises, when commenced and completed, shall at once become a part of the realty of the lessors, without right or authority of any person or corporation to remove the same, ''provided, the lessee may alter, remodel, improve, repair or reconstruct the same at its pleasure, but not so as to

impair the value thereof; that at all times throughout
the term of the lease the lessee shall maintain upon the
said premises a building of the aforesaid character."
The rental reserved to January 31, 1911, was $3,000.
paid simultaneously with the execution of the lease, and
$500. per month thereafter payable on the first day of
each month, and the payment of taxes, assessments and
governmental charges imposed upon the premises. The
lessee was required to keep the improvements and fix-
tures insured, with the loss payable to the lessors, with
the right reserved in the lessee in case of loss by fire to
rebuild or repair, with reasonable diligence, the build-
ing so destroyed, and to use such insurance money there-
in. The contract obligates the lessee to bear all expense
of the erection, construction, maintenance and operation
of the building to the end that the rentals reserved to
the lessors shall be met. Paragraph 6 thereof is as
follows:

"It is expressly understood and agreed (and notice
is hereby given), that nothing herein shall authorize the
lessee or any person dealing through with or under it, to
charge said lands, or any interest of the lessors therein,
or this lease, with any mechanics lien, or lien or incum-
brance of any kind whatever. On the contrary, (and
notice is hereby given), the right and power to charge
any lien or incumbrance of any kind against the lessors,
or their estate, is hereby expressly denied, and the lessee
covenants that it will not permit or suffer any bill of
any mechanic, labor or material man, or for any furnish-
ings or equipments of said premises, to be or remain
unpaid. The lessee shall, before commencing the erec-
tion and construction of a building on said premises,
furnish or cause to be furnished a bond in a bonding
company satisfactory to lessors, guaranteeing the due
observance of this clause 6."

April 15, 1910, the lease was filed for record and

duly recorded in the office of the county clerk and recorder of the county in which the lots are located, and thereupon possession of the premises delivered to the lessee. April 20, 1910, the lessee entered into a written agreement with James Stewart & Company, one of the plaintiffs in error, whereby the latter, acting as the agents of the former, who were therein designated as the owner, agreed "to build for the said owner a building to be used chiefly for theatrical productions on the premises leased by the owner from" Talbott and Mugivan, the defendants in error, describing the particular lease here in question, designating the book and page where it is recorded. The building was to be erected according to plans and specifications prepared by a designated architect representing "The American Music Hall Company as the owner of the premises." It authorized Stewart & Company to obtain prices and estimates for building materials and work that might be required in the erection of the building, and to submit to the architect a complete list of bids received, together with their recommendation thereon, and to "prepare proper and satisfactory contracts covering the same for execution by the owner or its authorized agent", containing a proviso that Stewart & Company might do and perform each particular portion of the work as might be determined by themselves, the architect and the owner, as most expedient. The American Music Hall Company was to furnish the necessary funds to carry on the work and pay Stewart & Company, for superintending the same, a percentage compensation depending upon the cost of the building. Bids were thereupon received for various portions of the work, and The American Music Hall Company, as owner, entered into written contracts therefor as follows: with F. H. Cowell for the brick work; with the Colorado Portland Cement Company for the cement; with Hugh Murphy for rock. A like contract

was prepared by Stewart & Company for execution by The American Music Hall Company, as owner, and the John Eichleay, Jr., Company, as contractor, for the structural steel, but, though approved by the architect, was never signed by either of the contracting parties. McPhee and McGinnity Company, a corporation, without any written contract, but upon orders from Stewart & Company, furnished certain lumber which was used for concrete forms, piling for shoring up adjacent ground and supporting the foundations of buildings jeopardized by the excavation. Work upon the structure proceeded for a while but certain bills became due and payable, and, default having been made therein, the work ceased early in August. Stewart & Company superintended that which was done by others, did a portion of the excavating, put in the concrete footings, placed some structural steel in the foundation, etc., paid certain bills; and herein claim a lien on the premises for $14,059.30 less $4,129.02 paid to them by the American Music Hall Company. The John Eichleay, Jr., Company fabricated and shipped to Denver from its works in Pittsburg, Pennsylvania, consigned to The American Music Hall Company, ten cars of structural steel. Of these, five cars were delivered on the premises and incorporated into the foundation and basement portion of the intended building; the other five cars were tendered by the railroad company at Denver but were never received by Stewart & Company or The American Music Hall Company or delivered upon the premises, but remained in the possession of the railroad. The Eichleay Company also prepared, or partially prepared, other structural products ready for shipment for use in this building. It filed four separate lien statements. The first statement is for structural steel delivered to and incorporated into the structure, and is in the sum of $6,812.83. The second is for structural steel fabricated and shipped to Den-

ver for use in the structure, but never delivered to, nor incorporated therein because of a cessation of work thereon, and is in the sum of $7,316.10. The third statement is for certain steel either fabricated or partially so at Pittsburg, but not shipped because of cessation of work on the structure, and is in the sum of $7,840.69. The fourth statement is for steel designed for the structure but never cut, and for details made and bills of materials written for the work, and is in the sum of $1,088.86. F. H. Cowell claims a lien for $2,332.65 for brick, cement and sand furnished and placed in the basement walls. The Colorado Portland Cement Company furnished cement which was used in the foundation work of the building and claims a lien for a balance in the sum of $665. Hugh Murphy furnished crushed stone which was mixed with the cement and used in the foundation, and claims a lien therefor in the sum of $246.90. McPhee and McGinnity Company claims a lien for the material hereinbefore designated as furnished by them in the sum of $495.80. At the time work ceased the excavation for the basement had been partially completed and a large portion of the foundation of the building constructed. Subsequent to the filing of the liens, but prior to the institution of the foreclosure proceedings, the lessors, after notice to the lien claimants of their intention so to do, forfeited the lease under the terms thereof and took possession of the premises; and the sole question here involved is the right of plaintiffs in error to fasten their respective liens upon the title of the lessors in and to the lots. The right claimed was denied by the trial court and the purpose of this action is to reverse that judgment.

Plaintiffs in error claim that they are entitled to, and may maintain their respective liens either under the provisions of § 4025 or those of § 4029, R. S. 1908.

§ 4025 gives, to the persons therein designated, "a lien upon the property upon which they have rendered

service or bestowed labor on for which they have furnished materials   *   *   *   for the value of such services rendered or labor done or material furnished," upon the condition, however, that they acted in that regard "at the instance of the owner" or of some person acting by his authority.  Clearly here the word "owner" has reference to the word "property", and the latter signifies the character of the structure or improvement designated in the first part of the section, that is, building, mill, bridge, ditch, flume, aqueduct, reservoir, tunnel, fence, railroad, wagonroad, tramway or other structure or improvement upon land to which a lien attaches solely by virtue of this section.  In other words, by this section the lien is given upon the structure or improvement built or placed upon the land.  That this is the meaning of the section is made certain by its other provisions and that of the act.  Further in the section the right to the lien is restated upon the same condition as above specified, except the word "owner" is followed immediately by the words "of the building or other improvement"; that is, the lien is given when, and only when, the work is done or services rendered or materials furnished "at the instance of the owner of the building or other improvement, or his agent."  Moreover, the section contains the declaration that every "person having charge of the construction, alteration, addition to, or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this act", clearly meaning that the person having charge of the construction of the building or improvement, etc., is the statutory agent of the owner of the building or other improvement, but he is not thereby made such agent of the owner of the land upon which the improvement is placed.  It is only by § 4027 that the land whereon such building, structure or improvement may be made, is subjected to the liens provided by the act.  Therefore, ownership of the build-

ing, structure or improvement, and the doing of the work thereon or the rendering services or furnishing material therefor at the instance of such owner or his agent, plus ownership in the same person of the land upon which such structure or improvement is erected or placed, are essential, under §§ 4025 and 4027, to the validity of a lien upon such land. This meaning is further evidenced by subsequent provisions of the latter section. It constitutes the lien, where it is for work done or material furnished for an entire structure, erection or improvement, superior thereon to prior liens or incumbrances of the land upon which the same is erected or placed, and authorizes in the enforcement of such lien the sale of such improvement and the removal of the same from the land upon which it stands. It further provides that the lien given by the act shall extend to any "conveyable interest of such owner or reputed owner in the land upon which such building, structure or improvement shall be erected or placed," or that he may thereafter acquire subsequent to the making of the *contract* or the commencement of the work upon such structure and before the establishment of such lien by process of law. It, therefore, follows that under § 4025, coupled with § 4027, it is a condition precedent to the validity of the lien that the person, whose interest in the real estate it is proposed to bind or affect thereby, must have acted affirmatively relative to the structure or improvement placed upon the land, and must have some ownership therein.

In *Cornell et al. v. Barney et al.*, 94 N. Y. 394, 398, under a statute in substantial effect the same as our §§ 4025 and 4027, materials were furnished by plaintiffs to a lessee, (Salem), for an improvement in process of construction by the latter in pursuance of provisions in his lease by which he covenanted to erect a permanent building on the demised premises of, at least, a specified value, within a designated time, and in which the lessor, (Barney), covenanted to loan a specified sum as

the building advanced, to be secured by mortgage on the lessee's interest in the premises, and the building, upon the termination of the lease, to revert to and become the property of the lessor. The right to the lien was denied on the interest of the lessor for the reason that the material for which the lien was claimed was not furnished under any contract with him or at his instance, and that he did not cause the building to be constructed. Upon this point the court, at page 398, said:

"Section 1 of the Lien Act, applicable to the city of New York (Chap. 379 of the Laws of 1875), provides that 'every person performing labor upon, or furnishing materials to be used in the construction, etc., of any building, etc., shall have a lien on the same for the work or labor done, or materials furnished by each, respectively, whether done or furnished at the instance of the owner of the building improvement, or his agent.' To give a lien under this section, the work must have been done or materials furnished at the instance of the owner of the building or the improvement, or at the instance of his agent, and the lien is upon the building or other improvement. Such is the plain language, and there is no room for construction. Here the iron was not furnished at the instance of Barney. His contract with Salem did not even require any iron to be used in the erection of the building, and it does not appear that he had anything whatever to do with Salem's contract with the plaintiffs, or with the procurement of the iron from them, or that he knew anything about it. It is true that Salem covenanted with Barney to erect the building, and that Barney agreed to advance money to be applied toward the erection of the same, and that he was to have a mortgage on the same; yet the building was not erected for Barney, and was not, before the termination of the lease, to belong to him, and in no proper sense could the material furnished for the same be said to be furnished at his instance. In harmony with this view is section 2

of the act which provides that 'any person, who at the request of the owner of any lot, etc., grades, fills in, or otherwise improves the same, or the sidewalk or street in front of or adjoining the same, shall have a lien upon such lot for his work done and materials furnished.' Here the word 'request' is used in substantially the same sense as the word 'instance' in the prior section, and was intended to have the same scope.

Section 1 having provided for a lien upon the building, section 3 provides for a lien upon the lot upon which the building stands, as follows: 'The land upon which any building, etc., is constructed, etc., shall be subject to the liens if at the time the work was commenced or materials for the same had commenced to be furnished, the land belonged to the person who caused said building, etc., to be constructed, etc.; but, if such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to such lien.' The plaintiffs can have no lien under this section upon Barney's interest in the land, because he did not in any proper sense cause the building to be constructed. Within the meaning of this section the building must be constructed for and at the expense of the owner of the land or under contract with him. Salem caused this building to be constructed, and the plaintiffs could have a lien upon his interest in the land under his lease.''

This is not the case, however, under § 4029, coupled with § 4027. Thereunder a lien may attach to the lands of a person or his interest therein by his non-action, coupled with his knowledge that the building or structure was erected upon or removed to his land, or, being thereon, was altered, added to or repaired. Indeed, it does so attach under such circumstances, unless he is excluded from the application of the mechanic's lien law by reason of the provisos in the section, or within five days after he shall have obtained knowledge of the work or the intention to do the same he gives notice as re-

quired therein that his interest shall not be subject to any lien for such work. The controlling distinction in this respect between § § 4025 and 4027, on the one hand, and § § 4029 and 4027 on the other, is, as hereinbefore stated, that in order to fasten a lien upon a person's interest in real estate under the provisions of the former sections, such person must have some ownership in the improvement constructed, etc., and must have, as such owner, contracted to have the same erected, either directly or through an agent thereunto authorized; while under the provisions of the latter sections, such contractual relation can not exist; and the ownership in the structure or improvement essential to the validity of the lien is invested in the owner of the land by operation of law. In other words, the inception of the right to a lien under § 4025, coupled with § 4027, grows out of contract; while under § 4029, coupled with § 4027, it arises from estoppel. Nor is this distinction affected by the declaration in § 4025, that in default of filing the contract for the work, or a memorandum thereof, as therein required, the labor done and materials furnished by the parties named, prior to the filing of the same, shall be deemed to have been done and furnished at the personal instance of the owner, and the person furnishing the same shall have a lien for the value thereof. It is still the affirmative contractual relation of the owner of the property to the improvement made or work performed upon which the claimant's right to the lien is based, and the effect of the default of the owner as to filing the contract or a memorandum thereof only removes the statutory restriction that the lien can extend only to the contract price and enlarges the right in that regard under the principle of estoppel so as to cover the value of the work performed or material furnished. Indeed, in *Grimm v. Yates, ante* 268, decided at this term, we expressly declared that the purpose of § 4029 "is to require an owner, where another in possession of his prop-

erty is making improvements, which by the terms of the agreement between the owner and the party in possession, the latter is without authority to make, to give notice to those performing labor or furnishing materials for such improvements, within five days after he shall have obtained knowledge that they are being constructed, that his interest in the property, upon which such improvements are being placed, shall not be subject to any lien therefor, and that his failure to do so renders his interest subject to a lien for such improvements.''

Applying the law to the facts of this case it follows that the liens sought to be established and enforced herein can not.be sustained under § 4029 as affected by § 4027. The defendants in error were under no obligation by virtue of those sections to give or post the notice therein required. They were in no wise engaged in constructing the improvement but had entered into a contract with reference thereto; and were, therefore, by the very letter of a proviso of the section not of the class to whom the section applies but of a class expressly exempted from its terms. Moreover, the lessee was the party in sole possession of the premises and was making no improvement thereon which the terms of its lease and contract with the defendants in error did not authorize it to make. The contract here involved possesses no element of that described in § 4025, *supra,* as a contract between the ''owner'' and a ''contractor.'' By its terms nothing was to be paid by defendants in error but the work was to be done by the lessee at its own expense; and the acts of plaintiffs in error relative to the improvement were caused by the lessee and not by the lessors. Moreover, defendants in error were not the reputed owners of the structure or improvement, but, on the contrary, the lessee, in the contracts with plaintiffs in error, was designated as such owner. It can not be seriously claimed that under the agreement the lessee contracted with the lessors to furnish materials or perform any of the labor or services

named in the foregoing section of the statute, by the doing of which it would, by that section, be known as a "contractor." A contractor is "one who as an independent business undertakes to do specific jobs of work without submitting himself to control as to the petty details."

Plaintiffs in error, however, contend that the well recognized rule declared in *Shapleigh v. Hull,* 21 Colo. 419, 425, 41 Pac. 1108, is applicable to the facts of this case, and that their liens attach to the fee of defendants in error in the premises by virtue of the provisions of § 4025. We held in that case that where a contract of sale of real estate expressly requires the vendee to make improvements thereon, the interest of the vendor in the land is subject to the Mechanic's Lien Law for the improvements so made. Whether the rule should apply and subject the title of the lessor to a lien where the lease requires the lessee to make permanent improvements upon the leased premises of not less than a stated value, without other conditions or limitations, has never been determined in this state. In *Antlers Park R. M. Co. v. Cunningham,* 29 Colo., 284, 286, counsel contended for the application of the rule but it was found unnecessary to decide the point therein. *Williams v. Eldora-Enterprise Co.,* 35 Colo., 127, 130. That there is a clear distinction between the principles involved in the two classes of contracts is obvious. In the former the estate dealt with is one entity, and the contract of sale, containing the building requirements, can and does relate to no other thing. The vendor having required the vendee to erect the structure on the only estate that existed, and of which he was still the owner, the improvement likewise is his within the meaning of the law, and such owner's interest in the premises, by the terms of the statute, is, therefore, subject to the lien. There being but one estate in the land and both the vendee and vendor having an interest therein, the ownership of the permanent improvement placed thereon is likewise in both and the vendee in making the

improvement is necessarily the agent of the vendor. Under a lease, however, the estate is divided into term and reversion, and so is the ownership of the thing. In fact, there are two entities: the leasehold estate and the reversionary estate, with either of which, it would seem, parties should be permitted to deal independently of the estate of the other, and when they do so their rights and obligations in the premises, except as affected by statute based upon the doctrine of estoppel, should be measured accordingly. However, could it be said that this distinction does not logically exist, it is, nevertheless, certain that the mere fact, that the terms of a lease obligate the lessee to place permanent improvements upon the premises at his own expense, does not, of itself, constitute him the agent of the lessor in the erection of such improvements. The rule is clearly stated in *Atlas Portland Cement Co. v. Main Line Realty Co.*, 112 Va. 711; 70 S. E., 536, 537, as follows:

"It is insisted that the appellants' claims are liens upon the lessor corporation's interest in the lot, because the lessee corporation was in effect the agent of the lessor in causing the building to be erected on the lot. The evidence fails to sustain this contention, unless in a contract of lease, where the lessee is by its terms required to erect a building upon the leased premises, the latter becomes the agent of the lessor. It is well settled that such relation does not make the tenant the agent of the landlord, and that it does not give him the implied authority to create a lien upon the landlord's interest therein for improvements made thereon, unless the lawmaking power expressly or by necessary implication enacts otherwise."

Citing, Phillips on Mechanics' Liens, § § 89, 90; Boisot on Mechanics' Liens, § § 289, 291; Jones on Liens, § § 1273, 1276; *Mills v. Matthews*, 7 Md. 315; *Rothe v. Bellingrath*, 71 Ala. 55; *Harman v. Allen*, 11 Ga. 45.

In *Winslow Brothers v. McCully*, 169 Mo. 236, while the freehold interest was held subject to the mechanic's

lien for improvements erected upon the premises by the lessee under a covenant in the lease obligating him to do the same, the holding was not based upon the covenant alone, for the court on page 244, says: that the mere fact "that the tenant has contracted with the owner to make certain improvements on the leased premises, does not make the land, or the landlord's interest in the land subject to a mechanic's lien. For in such cases the tenant acts for himself and not as agent of the owner."

And in *Lumber Company v. Morris,* 170 Mo. App. 212, 156 S. W. 75, based upon a statute requiring, as the ultimate foundation of the lien, a contract made with the owner of the land sought to be charged with the lien or with that owner's agent, it was held that the statute, together with the meré covenant in a ninety-nine year lease to make permanent improvements upon the leased premises, would neither constitute the lessee the statutory nor the contractual agent of the lessor in making such improvements. The court therein, on page 216, upon the latter point, used the following language:

"Now, can it be said that merely by reason of the fact that a lessee covenants with a lessor to make certain repairs and improvements which will become the property of the lessor at the end of the term, this necessarily makes the lessee the agent of the lessor so as to bind the latter's freehold interest with the lien for the materials used in the improvement? If so, then no matter what is the character and extent of the improvements, nor how strong the language of the lease denying to the lessee the authority to bind the lessor's interest with a lien, the latter will nevertheless be bound, because the lien is a creature of the statute; and whenever the lessee, in contracting for improvements, acts as the 'agent' of the lessor, within the meaning of that word as used in the statute, the freehold is bound by the lien regardless of the inhibitory terms of the lease."

The opinion cites with approval, *Albaugh v. Litho-*

*Marble Co.,* 14 App. Cases D. C., and quotes therefrom the following:

The covenant "involves no theory of agency, but quite the reverse. The parties to the lease dealt with each other, not as principal and agent, but practically as adverse parties. To hold that a lessor covenanting with the lessee for the security of his interest under the lease, the payment of rent probably, should construct a building upon the land in the place of one to be demolished, would thereby and by virtue of such covenant make the lessee his agent and bind himself personally, as well as his property, for the contract of the lessee in the performance of his covenants, seems to us to be wholly without warrant either in law or in reason; we greatly question whether even the most positive legislation could impose liability upon one person for the obligation of another in such a contingency. Certainly no such liability is sought to be imposed by our mechanic's lien law. The covenant in question is itself evidence of the intention of all the parties that the lessor should not be bound."

Under this view of the matter it becomes necessary to ascertain: (1), whether the statute here under consideration has expressly or by necessary implication constituted the lessee the agent of the lessor and invested him with the authority to create a lien upon the lessor's interest in the fee for improvements made upon the leased premises; or, (2) of the covenants in the lease, coupled with the other facts of the case, constitute the lessee the agent of the lessor in making the improvements for which the liens are claimed?

Mechanic's lien statutes of our several states give but little aid in construing our own. They differ greatly in their terms and are subject to frequent amendment, and different provisions of the same statute often seem inconsistent and a lien may be sustained under one provision when other provisions would seem to negative the right thereto. Moreover, courts have too frequently ap-

plied, as controlling precedents, the broad reasoning and declarations of a decision made under one statute to the facts of a case arising under an entirely dissimilar statute. By reason of these things the decisions and reasoning of the courts can not always be accepted at their *prima facie* value, and should be cautiously considered and applied. However, much of the contradiction and confusion would disappear if the distinction between a contractual agent and a statutory agent, together with the particular facts of the case and statute under which such decisions were severally rendered, are kept clearly in mind in the consideration of each. Statutes giving liens for improvements made upon land "with the consent" or "with the permission" or "with knowledge" of the owner of such land, or where the owner of the land "knowingly permits improvements to be made" thereon, and statutes of like character, differ fundamentally from those where the lien must be founded on contract with the owner of the land. Under the former statutes the lien fastens upon the land through knowingly submitting or permitting it to be improved, plus the actual improvement thereof. These statutes, it would seem, discard the requirement of an actual contract and adopt the theory of estoppel. In other words, where by the statute the lien must be founded upon contract with the owner of the land, or his agent thereunto authorized by such owner, the true rule is that the lien claimant of a valid lien must establish, by proper proof, the fact that he is the contractual agent, either directly or indirectly, of such owner relative to the making of the improvement, or furnishing the material, for which the lien is claimed, while under statutes which fasten the lien by virtue of the fact that the improvements were placed upon the land "with the consent," "permission" or "knowledge of the owner" thereof, the person doing the work or furnishing the material therefor is essentially the statutory agent of the owner of the land who submitted or permitted it to be

improved. Section 4029, *supra,* with the provisos thereof eliminated, is of the latter class, while sec. 4025, *supra,* is of the former class. The fact that the latter section declares that any person having charge of the construction of the improvement is thereby constituted the agent of the owner, in no sense nullifies the previous requirement, as affected by Sec. 4027, *supra,* that the construction of the improvement by the owner 'of the land or by his contractual agent is essential to the inception of a lien thereunder. This is true because by that section there can be no statutory agent until the owner, either directly or through some contractual agent thereunto authorized, has moved forward in the construction of the improvement. In other words, there can be no statutory agent thereunder until subsequent to the creation of a contractual agent, and how far the lawmaking power could go in transforming the latter into the former would present a difficult question, for "there is no constitutional way for divesting a man's title except by his own act or default." *Spry Lumber Co. v. Trust Company,* 77 Mich., 199, 43 N. W. 778, 6 L. R. A. 204, 18 Am. St. 306. We, therefore, decline to accept as sound the construction placed upon a statute of apparent similar import to our § 4025, by the Supreme Court of Oregon, that a lessee, obligated by the terms of the lease to build on the land and the building to revert to the lessor, thereby becomes a "contractor" and the statutory agent of the lessor in the construction of such improvements. *Oregon Lum. & Fuel Co. v. Nolan,* 143 Pac., 935. The provisos in § 4029 and this construction of § 4025 harmonize and render the two sections consistent with each other and without which they would seem contradictory. Thus it is provided in the former that the contractor's lien extends only to the contract price, which also limits the lien rights of subcontractors, laborers, material men, etc., unless the owner

fails or neglects to file the building contract.or a memorandum thereof for record, in which event the rights of the latter extend to the value of the services rendered or materials furnished, to the same effect as if the materials were furnished or the work done at the personal instance of the owner; while under § 4029 the owner, with knowledge that his property is being improved without his having contracted in relation thereto, can act affirmatively and avoid liability therefor.

The distinction between the two classes of statutes and the principles involved are clearly recognized and applied in the New York decisions, in which state the different classes of statutes have been in force and their effect considered and determined. In *Cornell v. Barney, supra,* the two classes are considered and the effect of each clearly stated and announced, and our conclusions are in conformity therewith. That case was under a contract statute of that state, being § 1 of Chap. 379, Laws of 1875, while *Burkitt v. Harper,* 79 N. Y. 273, and *Otis v. Dodd,* 90 N. Y. 336, were under statutes of the other class, as was that of *Jones v. Menke,* 168 N. Y. 61, 60 N. E. 1053, relied upon by plaintiffs in error herein. Indeed, in *Schmalz v. Mead,* 125 N. Y., 188, 191, 26 N. E. 251, 252, which was under a permission or knowledge statute, and which involved permanent improvements made by the lessee under a covenant in the lease, it is said: "Under the statute which formerly regulated mechanic's liens in the city of New York, it is no doubt true that parties, situate as the respondents in this case are, could not have acquired any lien, as it was then necessary to show that the labor was performed or the materials furnished by the party claiming a lien under, or by virtue of, some agreement or contract between him and the owner of the land, and hence the numerous cases decided under the statute, as it then stood, have no application to this case."

The Illinois cases are also under the "consent", "permission" or "knowledge" class of statutes, though the court in *Carey-Lombard Lum. Co. v. Jones,* 187 Ill. 203, 58 N. E., 347, and *Crandall v. Sorg,* 198 Ill. 48, 61, 62, 64 N. E. 769, stated, substantially, that it would. regard the law the same if the statute was only of the contract class. The cases, however, did not call for the remark and it is, therefore, of no force and effect. We think, however, that what the court meant was that the facts brought the respective cases within either class of statutes, because the facts and circumstances disclose that the improvements in each case were the joint undertaking of both the lessor and lessee. Moreover, an examination of the cases cited by the Illinois court in support of the statement shows that *Burkitt v. Harper,* 79 N. Y., 273, *Schmalz v. Mead,* 125 N. Y., 188, as we have hereinbefore seen, and *Miller v. Mead,* 127 N. Y., 544, 26 N. E. 251, were based upon either "consent", "permission" or "knowledge" statutes, and the last two named cases were likewise upon contracts of sale, as was *O'Leary v. Roe,* 45 Mo. App. 567, *Hill v. Gill,* 40 Minn., 441, 42 N. W., 294, *Henderson v. Connelly,* 123 Ill., 98, 14 N. E. 1, 5 Am. St., 490, and *McCue v. Whitwell,* 156 Mass., 205, 30 N. E. 1134. The other cases, *Lumber Co. v. Nelson,* 71 Mo. App., 110, *Hall v. Parker,* 94 Pa. St., 109, and *Barclay v. Wainwright,* 86 Pa. St., 191, cited in support of the point are likewise irrelevant thereto, as will hereinafter appear. While there is a diversity of opinion under the contract statutes as to the proof essential to establish the contractual agency, and under the other class of statutes, on the question of what constitutes "consent", "permission" or "knowledge", it would seem that the courts have generally recognized and applied what we believe to be the true rule in such cases, that is, that where the facts and circumstances disclose that the improvement is the joint undertaking of both the lessor and lessee, the interest in the land of both may

be held under the mechanic's lien law for the improvements so made, but in the absence of such proof only the interest of the lessee is liable. Thus in *Barclay v. Wainwright, supra*, it is pointed out that the presence of an express covenant by the lessee to build at his own expense is not the criterion by which it must be determined whether the lessor's estate can be held for such improvements so made under contract with the lessee, but the determining factor in that regard is the *special character of each contract*. And in *Lumber Company v. Morris, supra*, p. 212, it is said:

"So that in order to make such covenant (to build by the lessee) constitute an agency between the lessor and lessee we are necessarily bound to look at the facts to determine whether there was an agency or not. If on account of the shortness of the lease, the extent, cost and character of the improvements, or other facts in evidence, such as the participation by the lessor in the erection or construction thereof, it can be seen that the improvement is really for the benefit of the lessor and that he is having the work done through his lessee, then it can be said with justice that the lessee in such case is acting for the lessor. But, if the facts do not show this, it would seem to be untenable to say that the mere inclusion in a lease of a covenant to improve and repair on the part of the lessee will create the relation of agency between the tenant and the landlord, especially where the tenant is to do the work at his own expense and is expressly denied any authority to bind the landlord."

*Lumber Co. v. Nelson, supra*, holds that the fee of the lessor is bound by the lien based upon an improvement made by the lessee pursuant to a covenant in the lease. This case, together with the other Missouri cases and certain Illinois cases, in which very broad language was likewise used, are reviewed and explained in *Lumber Co. v. Morris, supra*, pp. 219-222, as follows:

"Passing to our decision, we find that every one of

them, which hold that the fee is bound by the lien, do so only after examining the facts to see whether or not the lessee is in fact doing the work for the lessor, or whether the improvement is for the present or immediate benefit of the reversionary or freehold interest.

In the cases of *Dougherty, etc., Co. v. Churchill,* 114 Mo. App. 578, 90 S. W. 405, and *Curtain, etc., Co. v. Churchill,* 126 Mo. App. 462, 104 S. W. 476, the lessee was bound to change a hotel into a theater at an expense of $20,000 and the property became the lessor's at the end of ten years. Besides, the lessor obligated the lessee to build and placed no restriction on his authority to bind with a lien. And the court held that presumptively the lessor made the lessee his agent to bind the whole property for the improvements. But in the case now before us the clause saying the lessee shall have no such authority takes away any such presumption.

In the case of *Winslow Brothers v. McCully,* 169 Mo. 236, 69 S. W. 304, the court bound the freehold interest because the evidence showed that the owner of the fee was really having the work done by the lessee as a mere straw man. On page 248 the court says the lessee was in reality the *alter ego* of the lessor, the Van Raalte Investment Company. And on page 244 the court says the mere fact 'that the tenant has contracted with the owners to make certain improvements on the leased premises, does not make the land or the landlord's interest in the land subject to a mechanic's lien. For in such cases the tenant acts for himself and is not the agent of the owner.' In this case also the court held that it was proper to instruct the jury that if it was the intention, purpose and understanding betwen the fee owner and the lessee that the latter should complete the building for the immediate use, enjoyment and benefit of the lessor, and it was completed in pursuance to that understanding, then plaintiff was entitled to a lien against the fee.

In *Crandall v. Sorg,* 198 Ill. 48, 64 N. E. 769, the

lessor was jointly interested with the lessee in erecting the improvements which were to cost $300,000 while the price of the lot on which they were erected was a much smaller sum. The court held that the defendant Sorg was not an ordinary lessor but was actively engaged in erecting the building, and did not provide that the lessee should have no authority to bind his interest with a lien, but merely contented himself with a stipulation that if any liens were created the lessee would pay them and hold him harmless.

The case of *Carey Lombard Investment Co. v. Jones,* 187 Ill. 203, 58 N. E. 347, was decided under a statute of that State which authorized a lien against a lessor's freehold if the latter 'authorized or knowingly permitted' the lessee to improve the premises, a statute vastly different from ours. In addition to the statute in that case the court held that by the terms of the lease the right of the lessee to create a lien was recognized and a provision for forfeiture was made in case any were created. Furthermore, the improvements consisted of a building to cost not less than $6000 and the lease was for only five years with privilege of the lessor to terminate sooner and the lessor had in fact terminated the lease and the lessor was insolvent.

We have carefully gone through all of the cases cited by appellant and find that in all of them there is either a statute which by its peculiar terms authorizes a lien against the freehold without reference to the question of agency, or the facts were such as to make the owner of the freehold directly responsible for the improvements.

On the other hand the principle is laid down that a provision in a lease expressly requiring the lessee to make specified improvements or repairs does not make the lessee, in so doing, the agent of the lessor so as to bind the reversion of the lessor with a mechanic's lien therefor. (20 Am. & Eng. Ency. of Law (2 Ed.), 319; *Cornell v. Barney,* 94 N. Y. 394; *Rothe v. Bellingrath,* 71

Ala. 55; *Morrow v. Merritt,* 16 Utah, 412, 52 Pac. 667. It·
is true the text says there are decisions to the contrary,·
but those contrary decisions without exception, in the·
facts stated, show either a participation by the lessor in·
the building in addition to the mere covenant in the lease,
thus making the lessee actually the agent of the owner to
erect the building, or that the case was decided under
statutes which so defined the word agent as to bring the
persons ordering the improvements within the meaning·
of that term."

Measuring the facts of this case by the law so as-
certained, it is manifest that the judgment of the trial
court is right, as the liens claimed may not be sustained
under the provisions of § 4025 as affected by § 4027. The
lessors neither participated in the erection or construc-
tion of the improvement nor approved the plans therefor.
They had nothing to say as to the size and architecture
of the building or the material of which it should be·
built. While it was to cost not less than a substantial,
designated sum, there is no allegation nor showing that
the rents reserved were greater than the reasonable
worth of the vacant lots upon which the improvements
were to be constructed. If the improvements increased
the value of the freehold interest, it was not primarily
so but only as a future incident thereto, and the owner of
the fee was not the owner of the building or structure
within the meaning of the mechanic's lien law. He would
become such owner only by operation of law through the
expiration or termination of the lease, or at least only
when the building was "commenced and completed,"
when, by the language of the lease, and not until then,
it would become a part of the realty of the lessors.

However, should we assume that presumptively the
lessors made the lessee their agent by reason of the cove-
nant to build and certain other conditions in the lease,
the clause therein expressly denying to the lessee the
right and power to charge any lien or incumbrance of

any kind against the lessors or their estate, nullifies and renders non-effective such presumption. When a lease provides that the lessee shall erect a building on the premises and is silent as to the authority or want of authority of the lessee to subject the lessor's interest to a mechanic's lien, it is only by implication that it can be held that such authority exists. No such implication can arise in this case for the lease expressly denies to the lessee the authority to do anything with the premises that would bind the interest of the lessors therein with a mechanic's lien. The laws of this state do not prohibit or render non-effective a contract so limiting the power of a lessee, and it is unnecessary to inquire into the constitutionality of a law that should attempt to prohibit such contracts when the public health, safety, morals and welfare are in no wise involved. The power to contract with reference to one's property is a valuable right and courts should and will construe statutes as not abridging that right, when possible, in order to preserve the constitutionality of the law. Moreover, as a lease of real property is an instrument which, under the law may be recorded and thereupon constitutes constructive notice to those subsequently acquiring an interest in the premises, the rights and authority of the parties thereto and whatever agency it might be presumed was created thereby to deal with the estate, or the interest of either of such parties therein, is necessarily subject to the conditions and limitations expressed in the instrument creating the agency, unless otherwise provided by law. § § 694, 707, Rev. Stat. 1908, *Perkins v. Adams,* 16 Colo. App., 96, 100, 63 Pac. 792; *Delta Co. L. & C. Co. v. Talcott,* 17 Colo. App., 316, 321, 68 Pac., 985; *Loser v. Savings Bank,* 149 Iowa, 672, 128 N. W. 1101, 31 L. R. A. (N. S.) 1112.

Thus, in *Cornell v. Barney, supra,* it was held that when the lease was recorded and permanent improvements constructed on the leased premises by the lessee

under a covenant in the lease obligating him to do so, lien claimants for such work were chargeable with notice of all the terms contained in the lease. And in *Atlas Port. Cement Co. v. Main Line R. Co., supra,* upon the effect of the record of a lease, it is said: "It is true, as argued, that the contract of lease required the building to be erected; but it was to be erected by the lessee and the lessee alone and at its cost. The lease was of record and the appellants must be charged with notice of its contents."

Plaintiffs in error, however, contend that as the clause withholding from, and denying to, the lessee the power to charge the interest of the lessors with any mechanic's lien or incumbrances of any kind, contains a covenant upon the part of the lessee that "it will not permit or suffer any bill of any mechanic, labor or material man to be or remain unpaid," and requires the lessee, before commencing the erection and construction of the building, to furnish a bond satisfactory to the lessors guaranteeing the due observance of the clause, that thereby the contract recognizes that such liens might accrue, be filed, and be binding against the interest of the lessors. We do not concur in this view. On the contrary, we do not think it changes in any manner the meaning of that part of the clause which limits the authority of the lessee in the premises. The lessors were certainly interested in having all bills paid to the end that the lessee's interest in the premises be not subjected to a mechanic's lien and a new tenancy created by operation of law through the enforced assignment of the lease. And this is clearly the purpose of the requirement in that respect.

It is not conceivable that the legislature made provision, as it did by § 4029, *supra,* whereby an owner could protect his interest in land against mechanics' liens for improvements made thereon with his knowledge but in relation to which he had not contracted, and made like provision by § 4025, *supra,* whereby he could, when

entering into a certain class of contracts, that is, with a contractor or builder, limit to such contract price the lien liability of his land, and intended, as to all other contracts relative to improvements upon land, that an owner's rights in the premises and the liabilities that might be impressed thereon as a lien, could in no wise be protected and limited. Such a legislative enactment, if not unconstitutional, would be, at least, unjust and inequitable. We can not sanction a rule of law, unless by legislative enactment we are so required to do, whereby one man's property may be taken for the debts of another and such person be without power to prevent it. We, therefore, withdraw the former opinion filed herein and affirm the judgment of the trial court.

*Judgment affirmed.*

Decision *en banc.*

Mr. Justice Hill and Mr. Justice Scott dissent.

Chief Justice Musser specially concurred:

I agree that the judgment should be affirmed, but I rest my conclusion solely upon clause six of the lease, which is as follows:

"It is expressly understood and agreed (and notice is hereby given), that nothing herein shall authorize the lessee or any person dealing through with or under it to charge said lands, or any interest of the lessors therein, or this lease, with any mechanic's lien, or lien or incumbrance of any kind whatever. On the contrary (and notice is hereby given), the right and power to charge any lien or incumbrance of any kind against the lessors, or their estate, is hereby expressly denied, and the lessee covenants that it will not permit or suffer any bill of any mechanic, labor or material man, or for any furnishings or equipments of said premises, to be or remain unpaid. The lessee shall, before commencing the erection and construction of a building on said premises, furnish

or cause to be furnished a bond in a bonding company satisfactory to lessors, guaranteeing the due observance of this clause 6.''

If a mechanic's lien can be fastened upon the reversionary interest of the lessors it must be that the lease made the lessee the agent of the lessors with authority to so contract with reference to the erection of the contemplated building as to bind the interest of the lessors. The agency, if any, that existed between the lessors and lessees was created by the lease. Plainly that agency did not arise from that part of Sec. 4025 Rev. St. '08, which says that ''every contractor, architect, engineer, subcontractor, builder, agent or other person having charge of the construction, alteration, addition to or repair, either in whole or in part, of any building or other improvement as aforesaid, shall be held to be the agent of the owner for the purposes of this act.'' The lessee was not one of those enumerated in the statute who was to be deemed the agent of the owner for the purposes of the act unless the lease created such agency. If the lessee was at all the agent it was by virtue of the lease and not of the statute. It is elementary that the authority of an agent is limited and controlled by the instrument creating the agency and that any person dealing with an agent, and having knowledge of the limitations upon the latter's authority, must at his peril contract with the agent within the known limits of that authority. When a lease provides that the lessee shall erect a building on the real estate and is silent as to the authority or want of authority of the lessee to bind the lessor's interest with a mechanic's lien, it is only by implication, if at all, that it can be said that such authority exists. No such implication can be made in this case, for clause six of the lease, expressly and plainly, in words that need no other construction than their obvious meaning denotes, withholds from and denies to the lessee the authority to bind the interest of

the lessors with a mechanic's lien. There is no escape from this. The part of the clause which provides that the lessee would ''not permit or suffer any bill of any mechanic, labor or material man, or for any furnishings or equipments of said premises, to be or remain unpaid,'' is only a personal covenant; that is, one that extends only to the lessors and lessees. Under the lease, a lien would attach to the leasehold interest of the lessee in the premises, and the lessors were interested in seeing that the bills for labor and material were paid. The part of the clause before that withholds from the lessee any and all authority to encumber the lessor's interest with a lien. Nor does the sentence of the clause which provides that the lessee shall furnish a bond guaranteeing the due observance of the provisions of the clause in any manner change the meaning of that part of the clause which limits the authority of the lessee. The lessors were certainly interested in having the provisions of the lease carried out and they had the right to exact a bond guaranteeing such consummation. Any contractor, subcontractor, material man or laborer who would read this clause of the lease could obtain therefrom no other idea than that it was the intention of the contracting parties, the lessors and the lessee, that the interest of the lessors should not be subject to mechanics' liens in consequence of the erection of the building contemplated in the lease.

When the intention of the parties to a contract is found in a contract then it is known what the contract is. What the parties intended by clause six is obvious and plain. If the contract that the interest of the lessors should not be subject to a mechanic's lien is valid then these plaintiffs in error were not entitled to a lien against the interest of the lessors and the judgment of the lower court should be affirmed. In order that it may be said that the plaintiffs in error had a right to mechanics liens on the interest of the lessors it must be held that that part of the lease forbidding such a lien is void and with-

out effect; and then it must be implied, (for there are no express provisions in the lease to that effect) that the lessee was the agent of the lessors with authority to encumber the interest of the latter with a lien. In order to reach that holding and implication it must be held first, that the mechanics' lien laws of this state prohibit such a contract between the lessor and lessee, and second, that it was within the constitutional authority of the legislature to prohibit such a contract when the public health, safety, morals and welfare were in no way involved. The lien laws of this state do not prohibit or render ineffective such a contract between a lessor and lessee, hence it is not at all necessary to inquire into the constitutionality of a law that should attempt to do so. The power to contract with reference to one's property when such a contract does not affect the public health, safety, morals or welfare, (which matters are under the recognized cognizance of the legislature) is a very important right, and if it can be done, courts will construe statutes as not abridging that right so as to preserve the constitutionality of the law. In Illinois, it has been held that the right to so contract is clearly a property right and if the legislature should pass a statute prohibiting or restraining an owner and contractor from agreeing that the building should be relieved of liens, that such a statute would be unconstitutional.—*Kelly v. Johnson,* 251 Ill. 135, 95 N. E. 168, 36 L. R. A. (N. S.) 573; *Cameron Co. v. Gesike, ib.* 402, 96 N. E. 222.

While I do not express any opinion as to the constitutionality of such a statute, it seems to me that the Illinois cases, and all other authorities are to the effect that the right to contract with reference to one's property is a property right. To say that a person cannot lease his property upon such terms and conditions as he may choose, is to restrain him of full dominion over his property, and certainly any law which so restrains him beyond matters which effect the public health, safety,

morals or welfare, must do so expressly or by necessary implication, even if it may be constitutional. If such a law is constitutional at all it must come from the legislature and not from the courts. Our Mechanics' Lien Act provides that its provisions shall be liberally construed in order that its purposes may be achieved, but this refers to a liberal construction of what is in the act. It does not mean that the courts, in order that a person may have a mechanic's lien, have authority to drag into the act that which is not there, nor to disregard elementary principles of law, nor by unnecessary implication or doubtful construction lessen that dominion over his property to which an owner is entitled. Sec. 4033 provides that "no agreement to waive, abandon or refrain from enforcing any lien provided for by this act shall be binding except as between the parties to such contract." That section cannot be applied here, for an agreement to waive, abandon or refrain from enforcing a lien must be made by a party entitled to a lien; that is, by a contractor, subcontractor, material man or laborer. There is no such a contract in this case. Sec. 4029 provides that any building, etc., constructed upon any land, with the knowledge of the owner, shall be held to have been erected at the instance and request of such owner, so far as to subject his interest to a lien, unless the owner shall, within five days after he shall have obtained notice of the construction, give notice in a certain manner that his interest shall not be subject to a lien, provided that the provisions of the section shall not apply to any owner who shall have contracted for such erection. Plaintiffs in error contend that because the notice prescribed was not given, the liens attached to the lessors' interest. Assume, for the sake of the argument, that the section would apply in the absence of any notice. That section must contemplate an owner who has not already, in some effectual way, given notice that his interest will not be subject to a lien. Certainly the legislature did not have

in mind that a person who had already given notice should give additional notice in a certain manner. Nor does the section say expressly, or by necessary or any implication, that a lessor who has already contracted with a lessee, in a manner of which the world must take notice, that the interest of the lessor shall not be subject to a lien, must nevertheless give further notice, as prescribed by the statute, in order that his property shall be free from a lien. Nor can it be reasonably said that the legislature intended that one who already has ample notice from a lessor that the latter's interest shall not be subject to a lien, shall nevertheless be given further notice of that fact in the particular manner prescribed in the section before he can be deprived of a lien. Such additional notice would be needless to one already notified and to say that, because it was not given in the particular manner prescribed in the statute, one who already knows of the fact to be imparted shall nevertheless have a lien, would be somewhat arbitrary to say the least.

Mechanics' lien laws can be sustained only upon the theory that the lien is engrafted upon the interest of the owner because he has consented to the improvement in such a way as to permit a lien. In order that a lien may attach, the circumstances must be such as to show consent of the owner or to justify an inference of it. *Wheaton v. Berg,* 50 Minn. 525, 52 N. W. 926. In order to sustain a lien for the plaintiffs in error in this case, under that section it must be taken that the consent of the lessors is conclusively presumed to have been given in such a manner as would cause their interest in the property to be subject to a lien, because they failed to give the prescribed notice. In the case last cited, the Minnesota court had under consideration a section of the lien laws of that state almost identical with Sec. 4029 of our statutes, and that court struggled manfully to reach the conclusion that the section was constitu-

tional, and in order to do so it held that the presumption that the owner had consented that a lien might attach to his interest in the premises, by failure to give the required notice was *prima facie* evidence that he had consented rather than conclusive, and that section prescribed a rule of evidence. The court said:

"Those who may be engaged in contributing labor or material which go to the improvement of the land may often have reason to suppose that the work is being carried on at the instance or with the consent of the landowner. It is important to such persons that, if possible, it be made known then if the owner's consent be wanting, and that, therefore, they cannot subject the property to liability for the labor or material supplied by them for its improvement. Hence the statute, in effect, makes it the duty of the owner, who knows of the improvement being made, to give the prescribed notice if he would avoid the inference that it is done with his consent. From the neglect of the duty created by statute the inference follows. But it would seem to be impossible to construe this provision as making the mere neglect to give the specified notice *conclusive* upon the landowner in all cases. The circumstances must be such that he can comply with the statutory requirement, or he cannot be thus concluded."

It can be added with the same degree of force that the circumstances must be such that the persons interested in having a lien attach have not already received notice that the owner's interest shall not be subjected to a lien. The court further said that an owner who has knowledge of the erection of the building upon his premises may nevertheless show that he could not give the required notices and thus excuse his failure for giving them. Equally it can be said under this statute that the owner, in order to relieve his property of a lien may show that he has already given notice to that effect and that all interested did know that he had not consented

that his interest should be subject to liens, and that, therefore, it would be a needless thing to give the notice specified in the statute. It can not be conclusively presumed that the lessors in this case consented that their interest might be subjected to a lien when they expressly contracted with the lessee that it should not be and gave full notice to the world of such contract before anything was done toward the erection of the building. It is to be observed that Sec. 4029 provides for actual or constructive notice at the option of the owner. It does not expressly or impliedly exclude other actual notice, which may be given, nor does it in any manner assume that other constructive notice provided by general statute or law would not be sufficient.

The Minnesota court, after showing that construing the section as conclusive against the landowner, would make it unconstitutional or of doubtful constitutionality, said:

"But some reasonable effect should be given to the statute if it be possible; and this may be done by construing the statutory presumption, which springs from the failure to give notice, as being of a *prima facie* nature rather than conclusive, and as imposing upon the landowner who, knowing the fact of the improvement, has failed to give the prescribed notice, the burden of relieving himself from the statutory imputation of having consented to what was being done, by proof of his inability to give the prescribed notice of his dissent, and that in fact the improvement was made without his authority or consent. As the statute was obviously intended to establish a *rule of evidence,* and as it cannot be sustained if the statutory presumption is to be construed as conclusive, but may be if it has the qualified effect which we have suggested, we conclude that it must be so construed. The language of the law does not forbid this construction, and there are apparent reasons which may have led the legislature to impose the burden of

proof on the party who has peculiar knowledge concerning the matters to which evidence is to be directed.''

From what has been said, it follows that the section furnishes a rule of evidence, by which, in the first instance, the failure of an owner with knowledge to give the notice therein specified raises the presumption that the owner consented that his property be subjected to a lien, and to overcome this presumption that the owner consented that his property be subject to a lien, he must go forward with evidence to show that he could not reasonably give the notice, or that he had already effectually given actual notice, or such constructive notice as would be given by recording a lease with a provision similar to that in clause six of the present lease.

It is held in some authorities that when contracts of sale or of lease require the vendee or lessee to make improvements that the interest of the vendor or lessor will be subject to a lien when there is no stipulation to the contrary. In *Carey-Lombard Lumber Co. v. Jones,* 187 Ill. 209, 58 N. E. 349, it is said:

''Similar contracts have been before the courts in proceedings to enforce mechanics' liens, and have, without exception, so far as we are advised, been held to amount to authority or consent from the owner to a vendee or lessee to make the improvements, and, *in the absence of some stipulation in the agreement to the contrary,* to give a lien upon the interest of the owner for materials furnished or labor performed under contracts with the vendee or lessee.''

This opinion implies that in instances where the agreement contains a stipulation that the interest of the vendor or lessor shall not be subject to a lien such stipulation controls. The cases cited by plaintiffs in error as sustaining their claims to liens were all cases in which there was an absence of such stipulation in the agreement, or as in Illinois, in the case of a so-called lease, the court found that the relation between the par-

ties was in fact not that of lessor or lessee, but as joint venturers in the construction of a building. In *Shapleigh v. Hull*, 21 Colo. 419, 41 Pac. 1108, the owner agreed to sell land to a named vendee and the vendee agreed to erect houses on two of the lots. The contract was silent as to the right of the vendee to charge the interest of the vendor with a lien, so that there was an entire absence of any stipulation that the interest of the vendor should not be subject to a lien. It was under these circumstances that our court held that a lien would attach to the interest of a vendor. This court has not decided what the law is in the case of the presence of such a stipulation. Since, the decision in *Shapleigh v. Hull, supra,* sec. 4029, was passed. It was said in the Minnesota case, *supra,* that such a statute would permit a vendor who had made a contract similar to the one in *Shapleigh v. Hull, supra,* to free his property from a lien by giving the prescribed notice. If that is true, then the legislature has modified the rule of law as laid down in *Shapleigh v. Hull.*

On the other hand, in *Wilkins v. Abell*, 26 Colo. 462, 58 Pac. 612, there was a mining lease. The court said that by the demise the lessee acquired a qualified interest in the property which entitles him to work the same for his own benefit. In fact it may be said that a mining lease presupposes that the lessee will work the mine, else it would be of no use to him. In that case this court held that, "the lessee is in no sense the agent or superintendent of the lessor, nor is he a contractor in the contemplation of the statute." (Mechanics' Lien Stats.).

In *Antlers Park R. M. Co. v. Cunningham,* 29 Colo. 284, 68 Pac. 226, this court refused to decide whether or not the principle upon which *Shapleigh v. Hull, supra,* was decided would be applicable between a lessor and a lessee.

In *Williams v. Eldora, etc. Co.* 35 Colo. 127, 83 Pac. 780, there was an option to purchase a mining property and a lease thereof. The lessee was required to perform a certain amount of work on the property. After showing that the possession of the claim of the lessee and the doing of the work under the lease was as lessee and not as vendee in the option this court refused to apply the doctrine announced in *Shapleigh v. Hull, supra,* but applied the doctrine announced in *Wilkins v. Abell, supra,* and said:

"Nor can a lien be asserted as against the lessor owner on the ground that the lessee here occupied some relation to the mine with respect to the working of it other than that of lessee. The contract of leasing did not call for the erection of any permanent improvements. Its only requirement of the lessee in respect to work was that it should begin development work within a certain time and continuously employ two shifts of five men each. In the nature of things, a lease of a mine contemplates that the lessee must do at least ordinary development work. A mine is valuable principally if not wholly on account of the ore it contains, and to extract the same necessarily requires work to be done upon it. The work required here was merely ordinary development work, which brings the case within the holding in *Wilkins v. Abell, supra.* In other words, the labor performed and materials furnished by the claimants for which a lien is sought were done for and furnished to one who was in possession and developing the same whose only relation to the property, so far as concerns any requirement of work thereon, was that of a mere lessee."

In *Colorado Iron Works v. Taylor,* 12 Colo. App. 451, 55 Pac. 942, *Dougherty-Moss Co. v. Churchill,* 114 Mo. App. 578, 90 S. W. 405, and *Jones v. Menke,* 168 N. Y. 61, 60 N. E. 1053, there was no stipulation that the interest of the lessor should not be subject to a lien, and

hence those cases are not in point here. In the case of *Western Lumber & Mill Co. v. Merchants' Amusement Co.*, 13 Cal. App. 4, 108 Pac. 891, there was a lease, but it did not contain a stipulation forbidding a mechanic's lien on the interest of the lessor. It appeared in that case, and the court found, that the building was really erected by the lessor and that he was using the corporation lessee as an instrument to carry out his own venture. Certainly an owner cannot thus free his property from mechanics' liens. And it was for that reason that the California Court held that the lien would attach. In *Crandall v. Sorg*, 198 Ill. 48, 64 N. E. 769, there was a contract wherein it was agreed that Hullinger would sell and convey the land to Sorg; that the latter would then execute a lease for ninety-nine years to the former and that a building should be erected on the premises. Later on the lease was executed, and provided also for the erection of a building, and had in it a provision that no mechanics' liens should affect the claims of the lessor in the building and his rights in the premises. The court held that the contract and lease were executed as part of the same transaction; that they constituted one writing and should be construed together, and that when so read together it was manifest that Sorg was "not to be regarded as but an ordinary lessor of the premises." But on the contrary, it was held that the instruments disclosed that Sorg and Hullinger "jointly engaged in an enterprise which had for its purpose the construction of a building for rental purposes on the premises in question." Each put up money for that purpose. Under these circumstances, it was held that the clause in the lease concerning mechanics' liens was of no avail because Sorg was in the position of an owner engaged in erecting a building and not as a lessor.

In *Provost v. Shirk*, 223 Ill. 468, 79 N. E. 178, there was a contract of sale and lease the same as in the former case, so that the socalled lessor and lessee were jointly

engaged in the enterprise and were in the position of owners of the property. These Illinois cases placed the lessors and lessees in the position of two tenants in common, who contract with each other concerning the erection of a building upon their joint premises. In such a case, of course, they could not contract with one another so as to free the property of either from mechanics' liens. The question of abridging the right to make a contract concerning one's property with a lessee or vendee, which would be otherwise lawful, is not involved in any of the cases cited, and has never been passed upon by this court. That question is the one that is now presented. It appears to me that a reasonable view of our mechanics' lien laws is that they do not, expressly or by any implication, say that such a contract made between a *bona fide* vendor and vendee, or a *bona fide* lessor and lessee, would have no effect, when due notice has been given thereof. The contract between the lessee and the principal contractors expressly mentioned the lease and it was known that no contract was entered into with the owners of the fee. Owners of property have rights which courts and the legislature must respect. If a contractor has notice that he is to erect a building for a lessee it is reasonable that he should be required to ascertain the contents of the lease if he desires to proceed on the credit of the interest of the lessor. Had the subcontractors and material men investigated the nature of the principal contract they would have known of the lease, could have ascertained all of its provisions, and thus learned that they could not contract or sell on the credit of the lessor's interest. To have done so would have been the exercise of ordinary business diligence. There is nothing in our statutes, that I can find, that permits contractors and others who may have lien claims to proceed without any diligence to ascertain facts that are easily before them. Ordinary diligence

may be required of owners who construct or permit to be constructed improvements upon their property which become not only a source of profit to them, but of benefit to an entire community, but ordinary diligence should also be required from those who perform upon the credit· of the property. To free lien claimants from ordinary and reasonable diligence is to place an embargo upon improvement and progress. The lease in this case was recorded the day after its execution, and before any right to a lien could have attached. A lease of real property is such an instrument as is entitled to record under sec. 694 Rev. St., and, therefore, its recordation is constructive notice to the world of its contents. While that section does not specifically use the word "lease" it does use the words "agreements in writing of, or effecting title to real estate or any interest therein," and a written lease of land is such an agreement. Besides, sec. 707 says that the term "deed" includes leases, and the term "deed" is used in sec. 694. An instrument that is recorded according to law, and which the statute says shall be notice when recorded, is notice to the world of all the facts and matters therein expressed, and not only of such facts, but of all facts suggested therein and which reasonable inquiry would elicit.—*Perkins v. Adams,* 16 Colo. App. 96, 163 Pac. 792; *Delta etc. Co. v. Talcott,* 17 Colo. App. 316, 68 Pac. 985; *Loser v. Savings Bank,* 149 Ia. 672, 128 N. W. 1101, 31 L. R. A. (N. S.) 1112.

In *Armstrong Cork Co. v. Merchants' Ref. Co.,* 184 Fed. 199, 107 C. C. A. 93, there was a lease which provided that the improvements made by the lessee should remain his property, and the court held that the recording of the lease was notice of this stipulation. The court said:

"The record of the lease was notice to the complainant that the improvements he was placing in this warehouse remained the personal property of the lessee,

that they did not become a part of the realty and that Lyon's reversion in the warehouse and the land upon which it stood were not chargeable with a mechanic's lien for the purchase price of the work and the material it was furnishing *Faxon v. Ridge,* 87 Mo. App. 299, 307, and the conclusion is that the amended bill did not state facts sufficient to show that the complainant was entitled to a lien upon the interest of the lessor in the land and warehouse.''

In *Cornell v. Barney,* 26 Hun. 134, there was a lease from the owner in which the lessee agreed to build or cause to be built on the land a building. The lease was recorded. Suit was commenced to foreclose a mechanic's lien against the interest of the lessor, and it was held that when the lease was recorded, the lien claimants were chargeable with notice of all the terms contained in the lease. In *Atlas P. Cement Co. v. Main Line Co.,* 112 Va. 7, 70 S. E. 536, while it was held that under the Virginia statute the right to a lien would not be implied where a lessee provided that the lessor should erect a building, yet on the question of the effect of the record of the lease the court said:

"It is true, as argued, that the contract of lease required the building to be erected; but it was to be erected by the lessee, and the lessee alone, and at its cost. The lease was of record and the appellants must be charged with notice of its contents.''

Undoubtedly the record of the lease was notice to the world that the interest of the lessor was not subject to a mechanic's lien unless it is held that the mechanics' lien statute repealed *pro tanto* the recording statute. Repeals by implication are not favored.—*Haldeman v. Colorado City,* 52 Colo. 234, 120 Pac. 1041.

In *Dunton v. The People,* 36 Colo. 128, 87 Pac. 540, it is said:

"If the provisions of the two statutes can be so con-

strued as to stand together, that construction must be given them, and the former is not repealed because they are consistent, and the repealing clause only purports to repeal the inconsistent parts of the act.''

In Black on Interpretation of Laws, p. 112, it is said:

''Every new statute should be construed in connection with those already existing in relation to the same subject-matter, and all should be made to harmonize and stand together, if that can be done by any fair and reasonable interpretation, and if the new act does not expressly declare the repeal of an earlier statute, it will not be construed as effecting such repeal unless there is such a repugnancy or conflict between the provisions of the two acts as to show that they could not have been designed to remain equally in force.''

The provision in the mechanics' lien laws, that an owner may, in a certain way, give notice that his interest is not to be subjected to a lien, is not at all inconsistent with the recording statute, under whose provisions the same notice may be given in another way. The two statutes can and should be read together and both permitted to stand.

In *Boyer v. Keller,* 258 Ill. 106, 101 N. E. 237, there was a lease which provided that the premises were to be used only as a theater, and that the lessee would make no alteration to the building on the premises without the written consent of the lessor. The privilege to make alterations was given to the lessee and he was to pay for all made. The lessee made alterations which were permanent in character and increased the value of the premises. The question was presented whether sec. 1 of the Illinois Act, so far as it subjected to a lien the property of one who knowingly permitted another to contract for improvements thereon, violated the constitution of the state. The court said the section did not restrict

the right of the owner to freely contract with reference to improvements which should be made upon it. It said that the lessor had the undoubted right to contract with the lessee that any improvements made should be made at the cost and expense of the latter and that the section did not prevent the enforcement of that contract. The court said:

. "So long, however, as that contract remained a secret agreement between the lessors and the lessee, said section 1 made the lessor owners liable in case they authorized or knowingly permitted the lessee to contract for the improvement of the property without advising the contractors or material-men of the provisions of the lease and notifying them that they must deal with the lessee under its terms."

And it was found that none of the lien claimants knew anything about the provisions of the lease. There was no claim that the lease was recorded. This case simply holds that the provision in a lease against liens that is kept secret and no notice of which is given will not save the interest of a lessor from the lien.

In *Pac. S. & D. Co. v. Bumiller,* 162 Cala. 664, 124 Pac. 230, 41 L. R. A. (N. S.) 296, the lease between the owners and the lessee provided that the owners should not be liable or responsible for any alteration or repair made in the building, by the lessee and that no alteration should be made without the written consent of the owners. It does not appear that any notice whatever was given of the lease and its provisions, by record or otherwise, and that case was determined as though no such notice had been given.

In *Hardware Co. v. Churchill,* 126 Mo. App. 462, 104 S. W. 476, there was a lease which provided that the lessee should have the right to make alterations in the leased premises and that all improvements made to him should be at his own expense and on his own account.

The lease was recorded shortly after it was executed. The court held in that case that the recording of the lease gave the lien claimant constructive notice of its terms, but held that the lien would attach, notwithstanding the agreement that the lessee should do the work at his own cost. This case comes more nearly in point in favor of the claimants than any they have cited. It is to be noticed, however, that the agreement in the lease was not that no right of lien should attach to the interest of the lessor, but that the lessor should construct the improvement at his own expense and on his own account. What is said in *Lumber Co. v. Morris,* 170 Mo. App. 212, 156 S. W. 75, at the top of page 220, kills the decision in the 126 Mo. App. as an authority in this case.

Rehearing granted defendants in error, January 4, A. D. 1915. Decided November 3rd, A. D. 1913. Rehearing denied to plaintiff in error, March 1, A. D. 1915.